## UNITED STATES v. STAPPENBACK et al.
### No. 50.

Circuit Court of Appeals, Second Circuit.
Dec. 5, 1932.

Irving K. Baxter, of Utica, N. Y., for appellants.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y. (R. O. Baldwin, Asst. U. S. Atty., of Syracuse, N. Y., of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The evidence upon which the defendants were indicted and convicted was obtained as the result of a raid made by two prohibition

agents upon a building in which was found in active operation a large still, concededly unregistered, and a quantity of corn sugar, mash, and alcohol. The defendants were apprehended just outside the building. By a preliminary motion to suppress the evidence and by appropriate objections and exceptions upon the trial, they challenge the admissibility of such evidence; and, by motion for a directed verdict, they raised the question of its sufficiency for submission to the jury. The issues thus presented require a somewhat detailed statement of the testimony.

The raided building was one of a group of buildings located upon a tract of land near the outskirts of the city of Utica. Access is by a private roadway which leads from a public street about one-third of a mile distant from the buildings. These premises belonged to defendant Stappenback and had been used by him for a number of years as a rendering plant. About 3 p. m. on August 26, 1930, two prohibition agents went to the premises to investigate a report obtained from an undisclosed source that a still was located thereon. As they approached along the highway, they saw a truck driven by a man who proved to be defendant Stappenback turn into the private road. They followed the truck, and, when they reached the first building, an open shed, which the truck had entered, they found Stappenback working on some carcasses of animals. In response to inquiries by Agent Kress, he stated his name, and that he was the owner of the premises; he denied any knowledge of the existence of a still, and said that he had leased the three-story brick building, in which it was later found, to an Italian named Papace. This lease he apparently produced subsequently, as it was introduced in evidence at the trial during the cross-examination of Agent Kress. Papace was named as a co-defendant in the indictment, but had not been apprehended at the time of trial.

Leaving Stappenback to continue with his work, the agents proceeded about 100 feet to a narrow alleyway which separates two of the other buildings, one being a boiler room and the other the brick building which contained the still. In this alleyway were the three other appellants, Pulio, Castiglione, and Tomaselli. One of them, Tomaselli, Agent Kress had seen standing at the corner of the alleyway as the agents drove up to the shed. He was then seen to turn and pass out of sight into the alleyway. It is the theory of the prosecution that the jury might infer that he summoned the other two from within the three-story building. At the time Agent Kress encountered these three men, he says the air was heavily laden with the fumes of alcohol and a smell which from experience he associated with the distillation of corn sugar. He could also hear the sound of water in motion within the brick building and a sibilant cracking as of steam. The windows were all boarded up. The three men were in working clothes, which bore grease stains, and their hands were black with dirt. Agent Kress informed them he was a prohibition officer, and asked what they were doing there. Pulio and Castiglione replied that they were looking for work, and Tomaselli said his name was Bruni, and that he worked for Mr. Stappenback. Tomaselli's clothing, however, bore no sign of rendering work stains such as did Stappenback's. Kress told the men to stay where they were, and instructed Agent Norris to remain with them. He then tried a door leading from the alleyway into the brick building. An unlocked padlock hung on the door casing, but the door was fastened in some way from the inside so that it could not be opened. Kress forced an entry through a window and found himself in a room containing a still and ten large vats, nine of which were filled with corn sugar mash. The still was in active operation and carrying a full head of steam. A stream of alcohol was running from the still into condensing vats on the second floor. No person was found within the building. Upon returning to the alleyway through the door, which could be opened from the inside, Kress placed the three men under arrest. He then inspected the boiler room and found that the boilers had hot fires and showed signs of having received very recent attention.

Somewhat later in the afternoon, after additional agents had been summoned by Kress, a more thorough search of the building was made, and in one of the rooms a suit of clothes was found hanging on a hook. In the coat pocket was found a leather card case containing a chauffeur's license bearing a photograph of Tomaselli. This card case and its contents were put in evidence.

Agent Norris testified in less detail in corroboration of the story told by Kress. Certain other agents testified to subsequent conversations with Stappenback at his home. These were admitted as against him only. They added nothing to support the charges against him. That the still was unregistered was conceded, and both sides then rested.

Upon the foregoing evidence the jury found Stappenback guilty on the conspiracy and nuisance counts, and not guilty on the counts charging possession of an unreg-

istered still, or manufacture or possession of alcohol. The other three defendants were acquitted of possessing an unregistered still and found guilty on the four other counts. Thereupon sentence was imposed as follows: Pulio and Castiglione, three years at Atlanta; Tomaselli, three years and three months at Atlanta, and a fine of $500 upon the possession count; Stappenback, a fine of $500 and a year in jail, the jail sentence to be suspended, if the fine is paid, and Stappenback put under probation.

■■ As to Stappenback, we are clear that the evidence was insufficient to submit to the jury. Although he owned the premises, he had leased the building where the still was found. Nothing was offered to question the good faith of the lease, and the jury apparently accepted it by acquitting him of possession of the still. Nor was there evidence from which it could be inferred that he even had knowledge of the use to which the building was being put, though such knowledge would not alone prove guilt. So far as appears, the only time he was on the premises after the lease was made was the day of the raid, and the agents had him under observation from the time he turned into the private road until they found him at work in his rendering room. There was no opportunity for him to have taken any part in the operation of the still on this occasion. He was not shown to have had any acquaintance with the other three appellants. It is true that on the preliminary motion he testified that he had been at his rendering plant in the morning and that Tomaselli had assisted him in his work, but no such evidence appeared on the trial. The evidence showed no more than his ownership of the building under lease and his presence in the vicinity on his own business while the still was in operation. This is far too little to support a verdict that he conspired with Papace or the other appellants to use the building for this purpose. The jury's surmise may be correct, but it is only a surmise. Nor can his conviction of maintaining a nuisance be allowed to stand, for he was not in possession of the building. Grillo v. United States, 31 F.(2d) 289 (C. C. A. 2).

■ It is urged on behalf of the other appellants that the evidence is also insufficient to connect them with the operation of the still. With this we cannot agree. It is obvious that some one had very recently been working on the boiler fires and in the building where the still was in active operation. These appellants were in working clothes, and their hands were dirty as from work. Tomaselli wore only overalls over his underwear, and his suit was hanging in the building. No one was within the building, and no one could have run away, for the only road was that traversed by the agents. On the opposite side vacant land extended to the Mohawk river. Their story that they came looking for work in that isolated neighborhood was palpably a fabrication. We are satisfied that the jury was well justified in finding that they were there to operate the still and its boilers and had discontinued their work when Tomaselli saw the agents drive up to Stappenback's shed. See De Gregorio v. United States, 7 F. (2d) 295 (C. C. A. 2).

■ But, although the verdict of guilt on the conspiracy and manufacturing counts is justified, the verdict on the counts charging possession of alcohol and maintenance of a nuisance is not. These appellants were but workmen, so far as the evidence indicated, and possession of the building was not in them. Conviction under the two counts last mentioned must be reversed. De Gregorio v. United States, supra; United States v. Dibella, 28 F.(2d) 805 (C. C. A. 2).

■ Thus far we have assumed that the evidence was properly admitted. It is now necessary to consider the contention that it should have been excluded because obtained by an illegal search and seizure. But, assuming all the appellants say to the illegality of the raid, they are met with the objection that it did not violate their constitutional rights, as they asserted no possession of the premises. This court is committed to the doctrine that only the owner or possessor of property is aggrieved by an illegal search and seizure of it. Connolly v. Medaile, 58 F.(2d) 629 (C. C. A. 2). We shall adhere to this view until instructed otherwise by superior authority.

■ However, the search of Tomaselli's coat and the seizure of his card case and its contents stand on a different footing. Although hanging within another's building, the suit remained in his possession. Even if it be assumed that the agents' entry into the building was lawful and their seizure of the illegal still and other articles used in commission of the crime was justified, this would not permit an exploratory search for evidence against the defendants. See United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877. The search of the coat and card case was of this character. We think evidence relating to it was illegally received

as against Tomaselli and necessitates a reversal as to him. It does not, however, affect the others, as their constitutional rights were not infringed.

 It remains to consider whether the judgment may be affirmed as to Pulio and Castiglione or whether the cause must be remanded in order that they may be resentenced. Each of them was given three years in the Atlanta Penitentiary. This is a longer sentence than is permissible under the conspiracy count (Cr. Code, § 37, 18 USCA § 88) but no longer than was permissible under the so-called Jones Act (45 Stat. 1446 [see 27 USCA §§ 91, 92]). Since it does not appear whether the court intended to impose three years on the manufacturing count or to cumulate shorter sentences on all the counts, we think it better to remand in order that Pulio and Castiglione may be resentenced in the District Court's discretion. Cf. Husty v. United States, 282 U. S. 694, 703, 51 S. Ct. 240, 75 L. Ed. 629, 74 A. L. R. 1407.

Judgment reversed, and cause remanded.