**GRAINGER et al. v. UNITED STATES.**

No. 5494.

Circuit Court of Appeals, Fourth Circuit.

Nov. 20, 1946.

Samuel Want, of Darlington, S. C. (H. E. Yarborough, Jr., of Florence, S. C., on the brief), for appellants.

Henry H. Edens, Asst. U. S. Atty., of Columbia, S. C. (Claud N. Sapp, U. S. Atty., of Columbia, S. C., and Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Malcolm Grainger, John Buffkin and Alex Weeks were tried in the United States District Court for the Eastern District of South Carolina for violation of the federal revenue laws relating to the registration and taxing of liquor· stills. All three were found guilty and duly sentenced. They have appealed.

The only question that we need consider was the validity of the search of a certain cabin by government agents and the seizure there of a newspaper addressed to Grainger and a book described as a ledger. These two times, over objections, were used in evidence. Grainger claims that this violated the rights granted to him by the Fourth and Fifth Amendments to the Constitution

of the United States. Particular stress is laid on the Fourth Amendment: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Government agents found three stills on the farm in question. They followed Buffkin and Weeks to the cabin and there arrested them. The day following the arrest, one of the agents, accompanied by Buffkin, went again to the cabin. Entry into the cabin was without force or protest. Without a search warrant, the agent made a search of the cabin and seized therein a newspaper addressed to Grainger at his home address in Florence County and a ledger. The name of Grainger was written across the front of the ledger. Entries in the ledger related to the handling of quantities of sugar and materials capable of use in the construction of a liquor still. Grainger was not on the farm at the time of either the arrest of Buffkin, and Weeks or the search of the cabin when the newspaper and ledger were seized by the agent.

The farm here, on which the cabin and stills were located, was in Darlington County, South Carolina, some miles from Grainger's home in Florence County. The cabin, a one-room structure, was from 100 to 200 yards from the stills. No path led from the cabin to any of the stills. The contents of the cabin consisted principally of a bed, refrigerator, desk, table and some chairs. No liquor, and no materials, supplies or instruments connected with a still were found in the cabin. Some of the things seen by the agent in the cabin were owned by Grainger and, later, were found in Grainger's home in the adjoining county.

■ We do not think it necessary here to review or even to consider the question of whether the search of the cabin, the seizure of the newspaper and ledger, and the subsequent use of the newspaper and ledger, violated any rights guaranteed by the Fourth Amendment. We decide simply that neither Grainger nor Buffkin nor Weeks was in a position to claim these rights.

■ The law seems well settled that the privilege or right of immunity from unreasonable search or seizure is personal and is available only to an owner, or one who asserts either a claim to, or control over the property subjected to the particular search or seizure. Thus, in Graham v. United States, 15 F.2d 740, 742, District Judge Symes, speaking for the Circuit Court of Appeals for the Eighth Circuit, said: "If Graham was in a position to urge the objections made to this search warrant, we might be compelled to sustain them. They cannot, however, be availed of by this defendant. The buildings searched belonged to, and were under the control of, his father. The narcotics seized were not in young Graham's possession, and at no time has he made any claim thereto. They were hidden in a shack occupied by the father, separate and apart from that occupied by the son. The guaranty of the Fourth Amendment to the Constitution against unreasonable search and seizure is a personal right or privilege, that can only be availed of by the owner or claimant of the property subjected to unreasonable search and seizure. See Rosenberg v. United States, 8 Cir., 15 F.2d 179; Goldberg Case, 5 Cir., 297 F. 98; Chicco v. United States, 4 Cir., 284 F. 434."

Again, the writer of this opinion, speaking for the Circuit Court of Appeals for the Fourth Circuit, in Kitt v. United States, 132 F.2d 920, 921, said: "These appellants were not in a position to take advantage of the Fourth Amendment, for that amendment, as its language indicates, is personal, and the rights thereunder granted relate not so much to the introduction of things in evidence in a criminal prosecution but rather to the avoidance of unreasonable searches of property as to which a person asserts some title or interest."

See, also, Ingram v. United States, 9 Cir., 113 F.2d 966, 967; United States v. DeVasto, 2 Cir., 52 F.2d 26, 29, 78 A.L.R. 336; Duke v. Commonwealth, 201 Ky. 365,

256 S.W. 725. In 47 Am.Jur. 508, we find: "The right to immunity from unreasonable searches and seizures is personal and can be asserted only by him whose rights are violated. Consequently, one who is not the owner, lessee, or lawful occupant of premises searched cannot raise the question whether there has been an unlawful search and seizure."

The record contains no evidence whatever that either Buffkin or Weeks had any measure of title, claim or control as to the cabin searched. Clearly, then, these two cannot invoke the constitutional privilege. We think Grainger, too, is in the same position.

■ Surely the mere fact that some of the articles of furniture in the cabin were owned by Grainger and later were found in his home in another county does not establish any substantial title, claim, possession or control of the cabin. Further, any slight probative force that this evidence might have is completely overcome by the testimony of Mrs. Malcolm Grainger, the wife of, and a witness offered by, Grainger. We append, ipsissimis verbis, the relevant testimony of this witness:

"Q. Who is the owner of that farm now? A. I am at the present time.

"Q. And when did you acquire title to it? A. In January, 1945.

"Q. Around what date? A. January 15, 1945.

\* \* \* \* \* \*

"Q. Did you own your farm—did you farm last year or rented it? A. We rented it to Manly Grainger.

"Q. How much did you rent it to him for? A. $700.00.

"Q. Did you have a note, or any evidence—? A. We had a note.

"Q. You had a note? A. Yes, sir, we had a note.

"Q. Did he pay you the rent? A. He didn't pay it when he rented the place. He paid it later in October, about the first of October." It would thus appear that, at the time of the incidents with which we are here concerned, Mrs. Malcolm Grainger was the owner of the farm and cabin, Manly Grainger was the lessee in possession, and Malcolm Grainger had no right, title or interest therein.

■ This case presents one anomalous situation. At the trial, the Government attempted, without success, to prove that the defendant Grainger did have a substantial measure of control over, and an interest in, the cabin. On the other hand, the defendant Grainger sought by the testimony of his wife (referred to above) to prove, and we think did prove, his lack of any real interest in, or control over, the cabin. We do not think, though, under these circumstances, that the Government is prevented from raising on appeal, or that we must refrain from deciding, the question of whether the defendant Grainger's lack of substantial interest in, or control over, the cabin, precludes him from claiming here the privileges granted by the Fourth Amendment.

There appears to be very little authority on this precise point. The closest case we have been able to find is Connolly v. Medalie, 2 Cir., 58 F.2d 629. In this case Circuit Judge Learned Hand (58 F.2d at page 630), said: "Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma."

In Chicco v. United States, 284 F. 434, Judge Groner, speaking for the Circuit Court of Appeals for the Fourth Circuit (284 F. at page 436), said: "On the contrary, he particularly disclaimed any connection with or relationship to the premises from which they (the objects sought to be excluded) were obtained. It is difficult, therefore, to understand upon what possible theory it can be said that their possession and use by the government, under the circumstances, was an invasion of his constitutional rights."

■ It would thus seem that the accused, seeking to exclude the evidence under the

Fourth Amendment, has the burden of showing that he can claim the privileges afforded by the Amendment by virtue of his ownership, title or possession of the premises searched. It would, therefore, seem to follow, where no such showing is found in the record, that the plaintiff is not helped by the facts (in the instant case) that the Government, for the purpose of proving the accused's guilt, sought without success to show the accused's ownership or possession of the premises searched and that the accused, in an endeavor to establish his innocence, tried with conspicuous success to disclaim any real connection with the same premises on which the search was made.

We, therefore, affirm the judgment of the District Court.

Affirmed.