**JEFFERS v. UNITED STATES.**
No. 10499.

United States Court of Appeals
District of Columbia Circuit.

Argued June 29, 1950.

Decided Dec. 7, 1950.
Writ of Certiorari Granted
March 26, 1951.
See 71 S.Ct. 570.

Prettyman, Circuit Judge, dissented.

T. Emmett McKenzie, Washington, D. C., with whom James K. Hughes, Washington, D. C., was on the brief, for appellant.

Joseph F. Goetten, Asst. U. S. Atty., with whom George Morris Fay, U. S. Atty., Arthur J. McLaughlin and Joseph M. Howard, Assts. to U. S. Atty., were on the brief, for appellee.

Before STEPHENS, Chief Judge, and PRETTYMAN and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The appellant was convicted in the District Court of having purchased, sold, dispensed and distributed cocaine and codeine sulphate not in and not from the original stamped package, 26 U.S.C.A. § 2553(a), and of having facilitated the concealment and sale of said narcotics after they had, with his knowledge, been imported into the United States contrary to law, 21 U.S.C.A. § 174. Several bottles of cocaine attributed to his possession and which carried no Government stamps were admitted in evidence over appellant's objection. Previous to trial he had moved to suppress this evidence. In this motion he claimed ownership of the bottles and asserted they had been unlawfully seized.

The evidence was obtained as follows: A reputed dealer in narcotics approached the house detective of a Washington hotel and offered him $500 to be let into a room in the hotel. He said that Jeffers, the appellant, had "stached" narcotics there. The detective told him to come back later. He then called a member of the Narcotics Squad of the Metropolitan Police to come to the hotel for some information. Upon his arrival the detective told him what had occurred. The two went to the assistant manager of the hotel, secured a key to the room, or apartment as it is sometimes called, and entered it without a warrant of any kind. There they found in a box in the closet 19 bottles of cocaine without the requisite Federal stamps. It was the apartment of two aunts of Jeffers, one of whom testified. She said that appellant did not occupy the room but did occupy another room in the hotel and had a key to their apartment with permission to use it whenever he saw fit. They paid for the care of his child at another place and he often came into the apartment when they were not there to leave money for the care of the child. She further testified the appellant had no permission to store narcotics in the apartment and she did not know that he had done so. It was stipulated that if called the other aunt would have testified to the same effect.

The search and seizure were unlawful. The Fourth Amendment reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

When an officer without a warrant of any kind and without permission unlocks,

the door of another's apartment, enters, searches it and seizes effects found in the course of such search, he violates the Fourth Amendment unless the circumstances bring the conduct within some exception obviating the necessity for a warrant. Such an exception is when the search and seizure are incident to a valid arrest, United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430; Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, or are justified by an emergency, Johnson v. United States, 1948, 333 U.S. 10, 14-15, 68 S.Ct. 367, 92 L.Ed. 436. There was no arrest to which the search and seizure in this case were incident, nor was there any emergency. As to the latter there was no evidence that the property was likely to be removed before a search warrant could be obtained. There is no indication that measures could not easily have been taken to prevent its removal or to arrest anyone attempting it. See Taylor v. United States, 1932, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Johnson v. United States, supra, and McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.

The Government, assuming *arguendo* the illegality of the search, disputes the standing of the accused to object to the evidence obtained. It is said no right of privacy of appellant protected by the Fourth Amendment was violated since the apartment searched was not his. But the property seized was his. And not only was the search unlawful; so also was the seizure. There was no warrant for either, and neither was under circumstances making it reasonable without a warrant There was no emergency and no arrest.

An accused does not have standing to prevent the admission of evidence obtained by an unlawful search and seizure which did not infringe his own personal rights protected by the Amendment. The constitutional provision against unreasonable searches and seizures does not in terms bar the admission of evidence obtained by its violation. The exclusionary rule as applied in the federal courts was formu-

lated by the judiciary in aid of the effectiveness of the Amendment, Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; see Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; but is available only to the victim of the unconstitutional conduct. "* * * the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized. * *" Goldstein v. United States, 1942, 316 U.S. 114, 121, 62 S.Ct. 1000, 1004, 86 L.Ed. 1312; see, also, Gibson v. United States, 1945, 80 U.S.App.D.C. 81, 149 F.2d 381, certiorari denied sub nom O'Kelley v. United States, 1945, 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429. Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., now states that it is the "person aggrieved" by an unlawful search and seizure who may move to suppress evidence so obtained. We assume the Rule does not enlarge the previously established limits of the class who may object. Lagow v. United States, 2 Cir., 1946, 159 F.2d 245. See, also, United States v. Janitz, 3 Cir., 1947, 161 F.2d 19, 21. Clearly, however, it does not contract those limits.

Where the premises are those of the accused he has the requisite standing. Harris v. United States, supra; McDonald v. United States, supra; Johnson v. United States, supra.[1] Here, however, the premises were not appellant's. While he had certain rights therein we believe the question of his standing to object to the evidence turns upon his claim of ownership of the evidence seized rather than upon an interest in the premises searched.

In most of the decided cases objection to the seized evidence has rested upon an interest in the premises unlawfully searched. Yet the rule has been stated often in terms which authorize the objection to be made as well upon the basis of ownership in the property unlawfully seized.

---

[1] These cases demonstrate also that an apartment is as much within the protection of the Amendment as any other home.

"* * * the settled doctrine is that objection to evidence obtained in violation of the prohibitions of that [Fourth] Amendment may be raised only by one who claims ownership in or right to possession of the premises searched or the property seized, * * *" [citing cases, including Shore v. United States, 60 App.D.C. 137, 49 F.2d 519]. Gibson v. United States, 1945, 80 U.S.App.D.C. 81, 85, 149 F.2d 381, 384.

"* * * This court is committed to the doctrine that only the owner or possessor of property is aggrieved by the illegal search and seizure of it. Connolly v. Medalie, 2 Cir., 58 F.2d 629. * * *" United States v. Stappenback, 2 Cir., 1932, 61 F.2d 955, 957.

In Shore v. United States, supra, objection of the defendants was overruled, in the court's language, "* * * for the simple reason that, since they do not claim property in the liquor or the trunks, no constitutional rights of theirs were invaded. The guaranties of the Fourth and Fifth Amendments, as we have seen, were intended for the benefit of the person whose rights have been transgressed, but this right is personal, and may not be availed of to protect one who claims no ownership in or right of possession of the goods seized, * * *" 60 App.D.C. at page 140, 49 F. 2d at page 522.

See, also, to similar effect, Shields v. United States, 1928, 58 App.D.C. 215, 26 F.2d 993; Nunes v. United States, 1 Cir., 1928, 23 F.2d 905; Klein v. United States, 1 Cir., 1926, 14 F.2d 35; Matthews v. Correa, 2 Cir., 1943, 135 F.2d 534, 537; Chepo v. United States, 3 Cir., 1930, 46 F.2d 70; Kitt v. United States, 4 Cir., 1942, 132 F.2d 920; Grainger v. United States, 4 Cir., 1946, 158 F.2d 236; Goldberg v. United States, 5 Cir., 1924, 297 F. 98; Remus v. United States, 6 Cir., 1923, 291 F. 501, 511; McMillan v. United States, 8 Cir., 1928, 26 F.2d 58; Armstrong v. United States, 9 Cir., 1926, 16 F.2d 62, 65; Lewis v. United States, 9 Cir., 1925, 6 F.2d 222.

In Pielow v. United States, 9 Cir., 1925, 8 F.2d 492, 493, the premises invaded were not those of the person to whom the seized papers and books belonged and who was on trial. They had been entrusted, for convenience in posting them, to the one from whose possession they were taken. In sustaining the objection to their admission, the court said, "* * * The Constitution protects against unreasonable search and seizure, not only their 'persons' and 'houses,' but the people's 'papers and effects.' * * *"

See, also, United States v. De Bousi, D.C. D.Mass., 1929, 32 F.2d 902, where the court said: "* * * I do not find in any of the cases where the evidence obtained upon wrongful search and seizure has been admitted that the defendant had or asserted any rights in the premises searched or in the property seized. * * *" 32 F.2d at page 903.

The Government cites Gibson v. United States, supra, in support of the position that the accused who objects must have rights in both premises and property. As we have seen, the language of the opinion is to the contrary. It is true that Gibson's ownership of the marihuana cigarette seized did not cause its exclusion as evidence against him, but the opinion shows that the cigarette which fell on the floor when Gibson took a handkerchief from his pocket, was seized in connection with his arrest for a crime committed in the presence of the officers. This made its seizure lawful, United States v. Rabinowitz, supra. In the present case the seizure was in no manner incident to an arrest.

Cases such as Ingram v. United States, 9 Cir., 1940, 113 F.2d 966; Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629; Bushouse v. United States, 6 Cir., 1933, 67 F.2d 843; Holt v. United States, 6 Cir., 1930, 42 F. 2d 103, and In re Dooley, 2 Cir., 1931, 48 F.2d 121, are instances in which the evidence was not suppressed, but in none of these cases did the one who sought suppression own either the premises searched or the property seized.

We believe the correct rule to be that one who seasonably objects to the use in evidence against him of property he owns which has been seized as the fruit of an unlawful search or otherwise in violation of the Fourth Amendment is entitled

to its exclusion though the premises searched were not his. He is a "victim" of (Goldstein v. United States, supra), and "aggrieved" by (Rule 41(e), supra) the violation of the Fourth Amendment. To deny him standing to object would be inconsistent with the purpose of the exclusionary rule to make the Amendment effective; for it condemns unreasonable seizures as well as unreasonable searches and applies to "effects" as well as to "houses."

The question remains whether statutory provisions that unstamped narcotics are subject to seizure and forfeiture [2] and " * * * no property rights shall exist in any such * * * property" [3] deprived appellant of ownership of the things seized and thus left him without standing to obtain suppression of the evidence. The statutory provision negating property rights in such goods is immediately followed by the sentence, "A search warrant may issue as provided in title XI of the Act of June 15, 1917, 40 Stat. 228 (U.S. C., Title 18, §§ 611–633), for the seizure of such liquor or property. * * *" (Footnote 3, supra). This recognition of the application of the Amendment to contraband articles indicates no intention to weaken its effectiveness. The statutes cited permit confiscation of the dangerous material and preclude repossession of it by one who might claim it; but the right to obtain its exclusion as evidence on a trial does not depend upon the right to retain or to repossess. Trupiano v. United States, 1948, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663; Agnello v. United States, 1925, 269 U.S. 20, 34, 46 S.Ct. 4, 70 L.Ed. 145. Rule 41(e), supra, recognizes that a motion to suppress may be granted notwithstanding

the property remains "otherwise subject to lawful detention" by the authorities. Compare, however, on this point, Connolly v. Medalie, supra. The exclusionary rule aids in the effectiveness of the Fourth Amendment by placing in the hands of him who has an interest in the premises unlawfully searched or who is the owner of the property unlawfully seized a right to obtain its exclusion as evidence against him. The provision in the statutes that no rights of property shall exist in some narcotics should be given meaning consistently with this rule. We see no indication of a Congressional intent to weaken the exclusionary rule by indirection. The interest which gives standing to object to the admission of evidence seized by means which violate the Constitution is not the same as the property right destroyed by statute to prevent the unauthorized use or circulation of dangerous drugs. The former is required by a judicially established rule of evidence which is not intended thus to be abrogated. The purposes of the evidentiary rule and of the statute providing for confiscation are thus reconciled. One has to do with preventing on a trial the use of evidence unlawfully seized. The other has to do with forfeiture. The two may and should stand unimpaired. Assuming that Congress might modify or abolish the exclusionary rule, Wolf v. Colorado, supra, 338 U.S. at page 33, 69 S.Ct. at page 1364, no intention to take such an important step should be read by implication into a statute which gives every indication of a purpose to keep the Amendment in full vigor. We note also that in Agnello v. United States, supra, contraband narcotics were excluded from

2. "All unstamped packages of the drugs mentioned in section 2550(a) found in the possession of any person, except as provided in this subchapter, shall be subject to seizure and forfeiture, and all the provisions of internal revenue laws relating to searches, seizures, and forfeiture of unstamped articles shall be extended to and made to apply to the articles taxed under this subchapter and the persons upon whom the taxes under this subchapter or part V of subchapter A of chapter 27 are imposed." 26 U.S.C. A. § 2558(a).

3. "It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this part, or the internal-revenue laws, or regulations prescribed under such part or laws, or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in title XI of the Act of June 15, 1917, 40 Stat. 228 (U. S.C., Title 18, §§ 611–633), for the seizure of such liquor or property. * * *" 26 U.S.C.A. § 3116.

evidence.[4] Contraband liquor, subject to forfeiture and destruction, was involved in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, in Amos v. United States, 1921, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, and in numerous other cases where the exclusionary rule was applied.[5] For purposes of standing to object to its admission in evidence, appellant was the owner of the property. Since it was seized in violation of the Fourth Amendment, it should have been excluded as evidence on his trial.

Reversed.

STEPHENS, Chief Judge, concurring.

The right of the people under the Fourth Amendment to be secure in their persons, houses, papers and effects against unreasonable searches and seizures applies to those accused of crime as well as to others. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Therefore the motion to suppress for use as evidence the unstamped packages of cocaine seized should have been granted by the District Court in the instant case unless the effect of the statutes, Sections 2558(a) and 3116 of 26 U.S.C.A. [53 Stat. 276 and 362(1939)], to subject narcotics to seizure and forfeiture and to forbid the existence of property rights therein deprived the appellant of standing, as a person aggrieved by an unlawful seizure, to move to suppress. It is not in dispute that except for the effect of the statutes referred to the appellant owned the cocaine seized. It is also not in dispute that the officer who seized the co-caine had not secured from a magistrate the warrant to search and seize required by the Fourth Amendment. It is clear also that the exceptional circumstances, such as the danger of immediate harm to or of immediate removal or destruction of the articles seized or the making of a search as an incident to a valid arrest, which have been recognized as relieving officers from the duty to obtain a magistrate's warrant, Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430 (1950), did not exist. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) is, I think, distinguishable. There the search and seizure were incident to a lawful arrest. In the instant case the search and seizure were not incident to a lawful arrest, or to any arrest. Jeffers was not present. Moreover, although Jeffers had no standing as an aggrieved person to move to suppress because of the unlawfulness of the search as to him, since he had no interest in the premises, he did have standing to move to suppress, because of the unlawfulness of the seizure without a warrant, unless the effect of the statutes referred to deprived him of standing as an aggrieved person.

The contention of the Government that in view of the statutes cited above the appellant had no rights of ownership or possession in the packages seized, and, therefore, had no standing as a person aggrieved to invoke the protection of the

---

4. The erroneous admission of the contraband caused a reversal as to Agnello. As to his co-defendants, the Supreme Court pointed out that the evidence had been admitted only as to Agnello, and therefore reversal of his co-defendants' convictions was not required. See opinion of the Supreme Court in 269 U.S. at page 35, 46 S.Ct. at page 7.

5. See, also, Taylor v. United States, supra, and Johnson v. United States, supra. In the latter the evidence excluded was opium paraphernalia. The discussion in Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, of the right to seize contraband, burglar's tools, counterfeit coins, and the like, assumes a warrant for that purpose or the presence of other circumstances which make the seizure reasonable. We think this is clear also from Commonwealth v. Dana, Mass., 1841, 2 Metc. 329, relied upon in Boyd v. United States, supra, 116 U.S. at page 624, 6 S.Ct. at page 529. See, also, dissenting opinion in Harris v. United States, supra, 331 U.S. at pages 162–163, 67 S.Ct. at page 1107, which in this regard is in no manner at variance with the prevailing opinion of the court in that case.

Fourth Amendment, omits, in my view, to consider the distinction between a forfeiture proceeding and a criminal proceeding. The provisions of Section 3116 of Title 26, U.S.C.A. do not automatically forfeit property rights in narcotics intended for use in violation of the Internal Revenue laws. A forfeiture proceeding is requisite. 53 Stat. 457 (1939), 26 U.S.C.A. § 3720(a) (1) and 3721; 53 Stat. 460 (1939), 26 U.S.C.A. § 3745(a); 62 Stat. 910 (1948), amended 63 Stat. 100 (1949), 28 U.S.C.A. § 507(a) (4). It is true that the illegality of a seizure will not defeat a forfeiture proceeding. The Government may adopt the seizure with the same effect as if it had originally been made by one duly authorized. United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926); Taylor et al. v. United States, 3 How. 197, 11 L.Ed. 559 (U.S.1845); The Caledonian, 4 Wheat. 100, 4 L.Ed. 523 (U.S.1819). But it does not follow from this that illegally seized property may be introduced in evidence in a criminal proceeding. The authorities are clearly to the contrary. Dodge v. United States, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926); United States v. Maggio, D.C., 51 F.2d 397 (S.D.N.Y.1931); United States v. Eight Boxes, etc., 105 F.2d 896 (2 Cir.,1929).

In Dodge v. United States, a motor boat seized by a police officer acting without authority later came into the custody of a federal prohibition director and was subjected to a condemnation proceeding in the United States District Court for the District of Rhode Island. That court at the instance of the owners of the motor boat dismissed the libel because of the unlawful seizure. That dismissal was reversed by the Circuit Court of Appeals for the First Circuit and the decision of the Court of Appeals was affirmed by the Supreme Court. That Court in an opinion written by Mr. Justice Holmes said:

. . . The owner of the property suffers nothing that he would not have suffered if the seizure had been authorized. However effected, it brings the object within the power of the Court, which is an end that the law seeks to attain, and justice to the owner is as safe in the one case as in the other. The jurisdiction of the Court was secured by the fact that the *res* was in the possession of the prohibition director when the libel was filed. *The Richmond*, 9

Cr. [Cranch] 102 [3 L.Ed. 670]. *The Merino*, 9 Wheat. 391, 403 [6 L.Ed. 118]. *The Underwriter* [2 Cir.], 13 F.(2d) 433, 434. We can see no reason for doubting the soundness of these principles when the forfeiture is dependent upon subsequent events any more than when it occurs at the time of the seizure, although it was argued that there was a difference. They seem to us to embody good sense. [272 U.S. at 532, 47 S.Ct. at 192]

But the Court went on to say:

The exclusion of evidence obtained by an unlawful search and seizure stand on a different ground. If the search and seizure are unlawful as invading personal rights secured by the Constitution those rights would be infringed yet further if the evidence were allowed to be used. [272 U.S. at 532, 47 S.Ct. at 192]

In United States v. Maggio, Maggio and another were charged in the United States District Court for the Western District of New York with knowingly transporting intoxicating liquor fit for beverage purposes. The liquor and a truck had been seized, concededly, without probable cause, and the defendants filed a motion to suppress and for the return of both the alcohol and the truck. The court ruled that the evidence must be suppressed and the truck returned to them. There was left in the case for determination the question whether or not the alcohol should be returned. The court ruled that it should not, that retention of the liquor by the Government was not in violation either of the Fourth or the Fifth Amendment to the Constitution, and that "suppression of the evidence of the seizure prevents proof of all acts growing out of such seizure and thus affords full protection given by the Fourth Amendment." The court thus clearly recognized that the liquor was subject to forfeiture, even though illegally seized, and that because subject to forfeiture it should not be returned; but it recognized also that such property because illegally seized could not be introduced in evidence in a criminal proceeding against those from whom it was taken. The ruling of the court was made under Section 25 of Title 2 of the National Prohibition Act, 41 Stat. 315 (1919), 27 U.S.C.A. § 39 (1927), providing that "It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property." That

statute parallels Section 3116 of Title 26, U.S.C.A., applicable in the instant case.

In United States v. Eight Boxes, goods subject to forfeiture because imported contrary to Section 593(b) of the Tariff Act of 1930, 46 Stat. 751 (1930), 19 U.S.C.A. § 1593(b) (1927), were seized by a customs agent under a search warrant later quashed because issued without a showing of probable cause. At the time the warrant was quashed the court directed the return of the property seized so far as it consisted of books, records and papers, but denied, because of the pendency of a libel to obtain its forfeiture, an application for the return of merchandise. In the libel proceeding, in the United States District Court for the Southern District of New York, it was contended for the owner of the goods, by a trustee in bankruptcy, that the court never acquired jurisdiction of the *res* for forfeiture purposes because the original seizure was under a warrant granted in violation of the Fourth Amendment. The District Court overruled that contention and its ruling was affirmed on appeal. The Court of Appeals (Circuit Judges Learned Hand, Augustus N. Hand and Chase), in an opinion written for the court by Judge Augustus N. Hand, said:

. . . the United States chose to adopt the seizure and therefore the court had jurisdiction of the merchandise and could properly declare it forfeited under Section 593 of the Tariff Act as smuggled and contraband goods. [105 F.2d at 898]

The court then further said:

There is a clear distinction between the use in a criminal proceeding of evidence obtained by illegal search and seizure and the filing of a libel to forfeit property obtained by like unlawful means. Neither papers nor property may be used as evidence in a criminal proceeding, Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, but, as Justice Brandeis said in United States v. One Ford Coupe, 272 U.S. 321, 325, 47 S.Ct. 154, 155, 71 L.Ed. 279, 47 A.L.R. 1025: "It is settled that, where property declared by a federal statute to be forfeited, because used in violation of federal law, is seized by one having no authority to do so, the United States may adopt the seizure with the same effect as if it had originally been made by one duly authorized. The Caledonian, 4 Wheat. 99 [100] 101, 4 L.Ed. 523; Taylor v. United States, 3 How. 197, 205, 11 L.Ed. 559. See United States v. One Studebaker Seven-Passenger Sedan [9 Cir.], 4 F.2d 534." [105 F.2d at 898]

*    *    *

The Fourth Amendment furnishes protection to the bankrupt against the use of the evidence obtained by the unlawful search and seizure but does not enable it to secure immunity against forfeiture of merchandise proved to have been imported contrary to law. [105 F.2d at 900]

In accordance with the foregoing, and also upon the grounds stated by Judge Fahy, I concur in his view that the motion to suppress filed in the District Court in the instant case should have been granted by that court and that, it having been denied, there must be a reversal.

PRETTYMAN, Circuit Judge (dissenting).

This case lies in a field in which the questions are close, and so I hesitate to express dissent from the view of a majority of the court. But I cannot escape the conclusion that this judgment should be affirmed and that the ruling is important in the enforcement of the narcotic laws.

The case has two distinctive features which are critical: (1) The premises searched were not Jeffers's. (2) The property seized consisted of narcotic drugs without stamps. The question posed therefore is: Can a person claiming ownership of unstamped narcotics seized in another person's apartment by officers without a warrant prevent the use of such narcotics as evidence against him (the claimant)? The court says "Yes". I think "No". There are two basic differences between us, the first as to the search and the second as to the seizure. The court says that the search was in violation of the Constitution. I say that it was not in violation of the Constitution so far as Jeffers was concerned. As to the seizure, the court says that it too was in violation of the Constitution because it was incidental to an unconstitutional search and also because the seizure itself was of property of Jeffers and was made without a warrant. I say, as I have indicated, that the search was not unconstitutional as to Jeffers and, further, that, neither his premises nor his person being invaded, he had no protected property right in the unstamped narcotics, they being instrumentalities of crime and *prima facie* intended for such use and *prima facie* being so used.

The court says that the search of the apartment was in violation of the Fourth Amendment. But, as I understand the law on the subject, the unconstitutionality of a search involves a particular person. The constitutional protection is of a person, not of a place. "The right of the people * *" the Amendment says. And fundamentally that is so. The Constitution created no rights. The Amendment was to protect· rights already possessed by the people. Those rights are personal. The one protected by the Fourth Amendment is a person's right of privacy. So a search of a place without a warrant is not constitutionally invalid in itself and as to all persons whomsoever; it is constitutionally invalid only as to the person whose right to the place is invaded. Thus, in the Gibson case,[1] the apartment of one O'Kelley was illegally searched and a quantity of marihuana seized. He and Gibson were arrested. A motion to suppress that evidence was granted, on appeal, as to O'Kelley but denied as to Gibson. Chief Justice Groner, writing for this court, said: "What has been said in relation to the illegality of the seizure from the New Jersey Avenue apartment is not, however, controlling in the case of appellant Gibson. It was not his home that was invaded and there was no molestation of his person on that occasion. In his case there was no violation of the IVth Amendment, and the settled doctrine is that objection to evidence obtained in violation of the prohibitions of that Amendment may be raised only by one who claims ownership in or right to possession of the premises searched or the property seized, and does not extend to the relief of a co-defendant." [2]

In Ingram v. United States[3] an apartment was searched and narcotics seized without a warrant. The tenant, Joseph Woods, and appellant Ingram were indicted jointly. Appellant moved to suppress, the trial court denied the motion, and the appellate court affirmed. Judge Garrecht wrote: "If the search and seizure constituted an invasion of the constitutional rights of Joseph Woods, it did not therefore invade the constitutional rights of appellant, the privacy of whose home or place of abode was not violated, nor can he be heard to complain that the rights of his co-defendant had been invaded, nor can he invoke the benefits of the Fourth and Fifth Amendments in behalf of his co-defendant." [4]

In Lagow v. United States[5] an order which forbade, so far as a corporation was concerned, the use as evidence of corporate records illegally seized, but which permitted such use as against the sole stockholder, was affirmed. The Second Circuit (L. Hand, Chase and Frank, Circuit Judges) in a *per curiam* opinion said, succinctly, that the sole stockholder "may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which he could have protected from seizure, if they had been his own, may be used against him, no matter how they were obtained from the corporation. Its wrongs are not his wrongs; its immunity is not his immunity."[6]

In Connolly v. Medalie[7] a brewery was searched without a warrant, and property found thereon was seized. Employees were arrested. An order suppressing the use of the evidence was reversed upon appeal. The court cited sixteen cases, in every Circuit Court of Appeals except the First, in which the ruling as to suppression was "always against defendants whose rights had not been invaded." The court held that the rights of the owner but not those of his employees had been violated by the unconstitutional search and seizure. In Bush-

1. Gibson v. United States, 1945, 80 U.S. App.D.C. 81, 149 F.2d 381, certiorari denied sub nom. O'Kelley v. United States, 1945, 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429.

2. Id., 80 U.S.App.D.C. at page 84, 149 F. 2d at page 384.

3. 9 Cir., 1940, 113 F.2d 966.

4. Id., 113 F.2d at page 967.

5. 2 Cir., 1946, 159 F.2d 245, certiorari denied, 1947, 331 U.S. 858, 67 S.Ct. 1750, 91 L.Ed. 1865.

6. Id., 159 F.2d at page 246.

7. 2 Cir., 1932, 58 F.2d 629, 630.

ouse v. United States[8] the residences of Peter and John Bushouse and George Phillips were searched in violation of the Constitution. Notebooks, correspondence and records were seized. The proprietors and two others named Dunn and Weisenberg[9] were arrested. Motions to suppress the seized evidence having been denied, on appeal the convictions were reversed as to the Bushouses and Phillips but affirmed as to Dunn and Weisenberg. The court said: "What we have said, however, does not apply to the appellants Joseph Dunn and Francis Weisenberg. No constitutional right of these defendants was violated. The introduction of the evidence in question gave to them no right to object. As to them there was no prejudicial error."[10]

Grainger v. United States[11] concerned not co-defendants only but all the defendants. A cabin was searched without a warrant. No one of the persons arrested had title to or right of possession of the cabin. The court affirmed the denial of a motion to suppress the evidence seized. After discussing several cases Judge Dobie said: "It would thus seem that the accused, seeking to exclude the evidence under the Fourth Amendment, has the burden of showing that he can claim the privileges afforded by the Amendment by virtue of his ownership, title or possession of the premises searched."[12]

It is true that Judge Dobie said that the court's decision was "simply that neither Grainger nor Buffkin nor Weeks was in a position to claim these rights."[13] But it is clear enough from his discussion that the inability to claim the rights was not a mere procedural lack of standing to object but was a substantive lack of rights.

In Holt v. United States[14] a truck loaded with liquor was searched without a warrant and the liquor seized. An employee of the owner, not in possession of the truck, was indicted. A motion to suppress the seized evidence was denied. On appeal the denial was affirmed. The court passed the question whether the search of the truck was constitutionally made, saying: "Be that as it may, it is clear, we think, that no right of the defendant was violated. * * * one malefactor may not claim the right to escape by reason of the fact that the constitutional rights of another were violated."[15] The court cited thirteen cases in support of its position.

In United States v. De Vasto[16] there were arrests for conspiracy to violate the Prohibition Act. Several days thereafter a safe in an office building was searched without a warrant and certain corporate records were seized. Officers and employees of the corporation moved to suppress. The appellate court said, "But it has been repeatedly held that the rights declared by the Fourth Amendment are personal and can only be asserted by him whose rights are violated."[17]

In In re Dooley[18] articles were seized in an illegal search and the court enjoined their use in any prosecution of the corporate owner or others in possession of the premises. Appellants sought to enlarge the order so as to suppress not merely as against them but as against all persons. Judge Augustus Hand said for the court: "Their contention is that the policy of the Fourth and Fifth Amendments to the Constitution precludes the use of illegally seized property as evidence against anyone whatever. But it has been held by an impressive weight of authority that the objection to an unlawful search and seizure is personal and cannot be successfully raised by third parties."[19]

8. 6 Cir., 1933, 67 F.2d 843.

9. The circumstances in respect to a sixth defendant, McDonald, are not recited in the opinion.

10. Supra note 8, 67 F.2d at page 844.

11. 4 Cir., 1946, 158 F.2d 236.

12. Id., 158 F.2d at pages 238–239.

13. Id., 158 F.2d at page 237.

14. 6 Cir., 1930, 42 F.2d 103.

15. Id., 42 F.2d at page 105.

16. 2 Cir., 1931, 52 F.2d 26, 78 A.L.R. 336, certiorari denied, 1931, 284 U.S. 678, 52 S.Ct. 138, 76 L.Ed. 573.

17. Id., 52 F.2d at page 29.

18. 2 Cir., 1931, 48 F.2d 121.

19. Ibid.

There are many other cases in the Circuit Courts of Appeals to the same effect.

The philosophical nub of this part of the controversy is depicted in Goldstein v. United States.[20] As I understand the matter, the federal Courts of Appeals are unanimous in the view that the rights protected by the Fourth Amendment are personal and that the exclusionary rule is merely remedial for the enforcement of those rights and is not an equitable principle designed to prevent the Government from profiting by its own wrong; and the available indications are that the Supreme Court is of the same view. In the Goldstein case the Court held that a person not a party to an intercepted telephone message could not object to its use outside the courtroom to induce testimony, and referred to the numerous and unanimous lower court decisions denying the right of objection to one not the victim of an unconstitutional search and seizure. The dissenting justices referred specifically to the matter and found those decisions "hard to square" with Silverthorne Lumber Co. v. United States [21] and in a footnote[22] said that those rulings would "allow the Government to profit by its wrong". Likewise the same doctrine seems to me to be implicit in Wolf v. Colorado.[23] In fact the Court there remarked: "Indeed, the exclusion of evidence is a remedy which directly serves only to protect those upon whose person or premises something incriminating has been found."[24] Judge Learned Hand spelled it out in Connolly v. Medalie, supra. He said: "The power to suppress the use of evidence unlawfully obtained is a corollary of the power to regain it. The prosecution is forbidden to profit by a wrong whose remedies are inadequate for the injury, unless they include protection against any use of the property seized as a means to conviction. The relief being thus remedial, the evidence has never been thought incom-petent against anyone but the victim. Conceivably it might have been; it might have been held that the prosecution, though not disqualified from taking advantage of another's wrong (Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159), should not profit in any wise by its own. But that would obviously introduce other than remedial considerations; the doctrine would then be like that of equity which denies its remedies to one who is not himself scathless."[25]

Mention must be made of Agnello v. United States[26] in this connection. There is confusion as to the precise ruling in respect to the defendants other than Agnello. The Court said that "The introduction of the evidence of the search and seizure did not transgress their constitutional rights." But in the next sentences the Court indicated that the disputed evidence was neither offered nor admitted in respect to these co-defendants. That indication is somewhat clouded by the last paragraph of the opinion. Examination of the bound volume of the record, etc., in that case reveals that in their petition for rehearing petitioners flatly asserted that "The can of cocaine was received in evidence against all the defendants", and the Government in its brief (page 19) clearly so intimated. My reading of the Agnello case is that the Court meant exactly what it said in the words above-quoted from the opinion.

In the case at bar I conclude that, since the apartment was not Jeffers's, either in title or in right of possession, its invasion was in violation of no right of his and so was not unconstitutional so far as he was concerned. As the case involves nobody but Jeffers, the search of the apartment cannot be treated as unconstitutional.

That brings us to the seizure. The search being not improper as to Jeffers, was the seizure of the unstamped narcotics an unreasonable seizure as to him? The statute

20. 1942, 316 U.S. 114, 62 S.Ct. 1000, 1007, 86 L.Ed. 1312.

21. 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319.

22. Footnote 4, supra note 20, at 316 U.S. 127, 62 S.Ct. 1007.

23. 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

24. Id., at 338 U.S. 30, 69 S.Ct. 1362.

25. Supra note 7, 58 F.2d at page 630.

26. 1925, 269 U.S. 20, 46 S.Ct. 4, 7, 70 L. Ed. 145.

says that there shall be no property rights in unstamped narcotics,[27] and that the lack of stamps is *prima facie* proof that the goods are intended for illegal use.[28] An officer, making a search that is proper so far as the alleged owner is concerned, sees a package of unstamped narcotics. The alleged owner is not present. May the officer seize the narcotics?

In Harris v. United States[29] the Court said flatly: "If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

The Court pointed out that there is a fundamental difference between contraband and property which is merely evidentiary, citing cases. To the same effect is the statement in United States v. Lefkowitz.[30]

In United States v. Stowell[31] the Court said: "By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed, and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienation, even to purchasers in good faith."

We are now considering the act of seizure, and that alone. The motion to suppress is based, apart from the search, upon the act of seizure itself. The property has not been destroyed, and we do not consider the power to destroy. The officer, says appellant, had no power to seize the narcotics. For that one reason he says it cannot be used as evidence.

The decision upon this part of the case depends upon the nature of the property seized. It is perfectly well settled that the Government, in the exercise of its police power, may seize, and even summarily destroy, some property. It is established that the state may summarily seize, without warrant, instrumentalities of crime and property intended for unlawful use.[32] That rule is upon the basis of preventive justice.

What is the property in the case at bar? Unstamped narcotics are instrumentalities of crime. And they are *prima facie*, by statute, intended to be used to violate the law. The physical absence of stamps was *prima facie* evidence of the commission of a crime. They are clearly, in my opinion, within the police power of summary seizure.

It is true that if the opinion in Trupiano v. United States[33] had remained in force it might have been necessary for law officers to secure warrants to seize even instrumentalities of crime, if time permitted, but I understand that the decision in United States v. Rabinowitz[34] has restored the law upon that subject to its former condition, and that the rule now is that circumstances determine the reasonableness *vel non* of a

27. 53 Stat. 362 (1939), 26 U.S.C.A. § 3116.

28. 53 Stat. 271 (1939), 58 Stat. 721 (1944), 26 U.S.C.A. § 2553.

29. 1947, 331 U.S. 145, 155, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399.

30. 1932, 285 U.S. 452, 466, 52 S.Ct. 420, 76 L.Ed. 877.

31. 1890, 133 U.S. 1, 17, 10 S.Ct. 244, 277, 33 L.Ed. 555, 559.

32. Milam v. United States, 4 Cir., 1924, 296 F. 629, 631, certiorari denied, 1924,

265 U.S. 586, 44 S.Ct. 460, 68 L.Ed. 1192; Vachina v. United States, 9 Cir., 1922, 283 F. 35, 36; Board of Police Commissioners v. Wagner, 1901, 93 Md. 182, 48 A. 455, 52 L.R.A. 775; State v. Four Jugs of Intoxicating Liquor, 1886, 58 Vt. 140, 2 A. 586. See the discussion and cases cited in 12 Am.Jur., Constitutional Law §§ 676–678.

33. 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663.

34. 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L. Ed. 653.

seizure. In a footnote[35] in Rabinowitz the Court referred to objects utilized in perpetrating a crime, and said: "There is no dispute that the objects searched for and seized here, having been utilized in perpetrating a crime for which arrest was made, were properly subject to seizure. Such objects are to be distinguished from merely evidentiary materials, which may not be taken into custody. United States v. Lefkowitz, supra [285 U.S.] at 464–466 [52 S.Ct. 420, 423, 76 L.Ed. 877]; Gouled v. United States, 255 U.S. 298, 309–311 [41 S.Ct. 261, 265, 65 L.Ed. 647]. This is a distinction of importance, for 'limitations upon the fruit to be gathered tend to limit the quest itself. * * *' United States v. Poller [2 Cir.], 43 F.2d 911, 914." That footnote points up the precise critical fact in respect to the seizure in the case at bar.[36] The mere existence of the narcotics without stamps was *prima facie* evidence of an intention to use them to perpetrate a crime. There, on a shelf, before the officer's eyes, was the instrumentality of a crime. In fact, a crime was being committed by somebody in the officer's presence, if constructive possession is, like actual possession, a crime. At any rate, these narcotics were not merely evidentiary; they were the actual instrumentalities of the crime. My view is that the officer could seize them when he saw them, even if he did not have a warrant.

Of course, the appellant might conceivably establish that these unstamped narcotics were intended for lawful use. Full opportunity to prove such a contention was afforded him upon the hearing on his motion to suppress. The statutory rule as to illegality is not conclusive; it is *prima facie*. The officers did not destroy the narcotics. They merely seized them. Appellant did not move to suppress or to regain the property upon the ground that it was intended for lawful use and, therefore, was merely evidentiary and not *per se* contraband. His motion was based solely upon the officer's power to seize as an original incident of power. But, since *prima facie* these narcotics existed in violation of law, *prima facie*, property rights did not exist in them. Any right of Jeffers to possession of them rested upon exceedingly narrow exceptions to that rule of nullity. Under the circumstances it was for him to prove the exception. Due process is satisfied by the opportunity to make that proof. This seems to be the doctrine of Samuels v. McCurdy,[37] People v. Diamond,[38] Rosso v. United States,[39] NG Sing v. United States,[40] Goode v. United States,[41] Wong Lung Sing v. United States,[42] and such cases. These rules as to goods which are *prima facie* the instrumentalities of crime are precisely opposite to those applicable to merely evidentiary material.

My conclusion on this point is that, absent unconstitutional search, an officer has power to seize unstamped narcotics under his summary police power to seize instrumentalities of crime and property intended to be used to violate the law, the statutory presumption of illegal use being enough to justify the seizure, even if, perhaps, not enough to justify summary destruction or to prevent return of the property if upon the hearing the legality of the possession be established.

A negative word is necessary. If a search is unconstitutional, any seizure, even of contraband, incidental to it is illegal. The incidental seizure takes on the character of the search. Likewise, if the seizure be incidental to an illegal arrest, it is illegal, taking on the character of the arrest to which it is incidental. In the case before us, the search was, for purposes of the case,

35. Footnote 6, id. at 339 U.S. 64, 70 S. Ct. 434.

36. Cases on this point usually trace back to Commonwealth v. Dana, Mass.1841, 2 Metc. 329. To the same effect is Davis v. United States, 1946, 328 U.S. 582, 590, 66 S.Ct. 1256, 90 L.Ed. 1453.

37. 1925, 267 U.S. 188, 45 S.Ct. 264, 69 L. Ed. 568.

38. 1922, 233 N.Y. 130, 135 N.E. 200.

39. 3 Cir., 1924, 1 F.2d 717.

40. 9 Cir., 1925, 8 F.2d 919.

41. 1945, 80 U.S.App.D.C. 67, 149 F.2d 377.

42. 9 Cir., 1925, 3 F.2d 780.

not unconstitutional, there was no arrest, and the property in its then obvious physical condition was *prima facie* evidence of an intended illegal use.

My conclusion is that upon a search of an apartment without a warrant officers may seize contraband goods claimed by others than the owner or possessor of the premises, and that such goods are admissible in evidence against such other persons, so far as the Fourth Amendment is concerned. That is precisely what I understand the cases to hold. In other words, where contraband goods are concerned the only protection afforded by the Fourth Amendment is to a person and to premises, the protection in the latter instance being afforded to the owner or possessor only. My view is that a seizure of unstamped narcotics is not unreasonable, so long as no premises and no person are illegally invaded. Apart from his premises and his person, no individual has a protected property right in unstamped narcotics.

Turning now to the opinion of the court in the case at bar, I have no disagreement with its basic general propositions. I agree that objection may be made by one who owns property seized, as well as by one who owns or possesses the premises searched. But when the court states the applicable rule it seems to me that it begs the question in this case. It says that one who objects to the use in evidence "of property he owns", which has been seized in "an unlawful search", is entitled to its exclusion. The questions posed in the case before us are, to adopt the quoted phrase: (1) Are unstamped narcotics "property he owns" within the meaning of the rule, and (2) is a search of A's apartment "an unlawful search" as to B who is not its owner or tenant?

The court refers to a claim of ownership, but I do not understand it to mean that a mere claim of ownership entitles a person to the exclusion of evidence. To be sure, a failure to claim ownership or a denial of ownership will defeat a motion to exclude.[43] But the soundness of those affirmative propositions does not establish their converse. Actuality of interest and not mere claim of interest must be the premise for a valid assertion of constitutional invasion.

The Pielow case,[44] cited by the court, is not pertinent, because the property, merely evidentiary and not contraband, was in the possession of a bailee of the accused. In the case at bar the property was contraband and, moreover, its presence in the apartment of the aunts was, according to their testimony, without their permission, against their wishes, and so a trespass.

The court attempts to avoid the Gibson case, supra, by pointing out that the narcotics were there seized as an incident to an arrest for the commission of a crime in the presence of an officer, i. e., possession on Gibson's person of one narcotic cigarette. But, if the entry into the apartment had been illegal as to Gibson, as it was to O'Kelley, the tenant, the arrest would have been unlawful and the seizure therefore unlawful. This court held the entry illegal as to the tenant but legal as to Gibson, and so the arrest was legal and the incidental seizure therefore legal. I do not grasp the significance of the distinction between that case and this one. If Jeffers had been present his arrest in the apartment would have been legal, even though an arrest of his aunts there would not have been. It would seem to me that, if a seizure of contraband on a man's person or in his presence be not an unreasonable invasion of his privacy, *a fortiori* its seizure in his physical absence would not be an unreasonable invasion.[45] On authority we find the sentence we have quoted above from the opin-

43. Shore v. United States, 1931, 60 App. D.C. 137, 140, 49 F.2d 519, 522, certiorari denied, 1931, 283 U.S. 865, 51 S. Ct. 656, 75 L.Ed. 1469.

44. Pielow v. United States, 9 Cir., 1925, 8 F.2d 492.

45. In the opinion in the Gibson case, from which we have quoted early in this opin-
ion, the court referred to a person who claims ownership of the property seized, but did not refer to the fact, shown by the record, that the Government testimony was that Gibson did own the cigarettes which he sought to suppress. That fact put Gibson in the same situation as is Jeffers.

ion of the Supreme Court in the Wolf case, supra. That sentence seems to say that if the incriminating evidence be not found on the objector's premises or person he cannot successfully object. And that is the precise opposite of the thesis upon which this court now attempts to avoid the Gibson case, supra.

The provision in the statute to which the court refers and which provides that a search warrant may issue for contraband goods, was inserted, in my view, so as to make sure that although these goods were not legally property they could be searched for. A search warrant would be required as against the owner or possessor of the premises upon which the contraband was located.

I do not see how an individual's rights can be invaded by Government seizure of contraband goods, of the nature of unstamped narcotics, not on the individual's person or premises. I agree with the trial court.