## SEEMAN v. UNITED STATES.
### No. 8669.

Circuit Court of Appeals, Fifth Circuit.

May 10, 1938.

Rehearing Denied June 4, 1938.

David Gertler, of New Orleans, La., and H. E. Kahn, of Houston, Tex., for appellant.

Douglas W. McGregor, U. S. Atty., and Brian S. Odem, Asst. U. S. Atty., both of Houston, Tex.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellant was convicted on two counts of an indictment, which charged him with conspiring with other named persons to defraud Lester Carter & Co. by shipping to them forged bonds in interstate commerce and with the substantive offense of shipping the bonds, in violation of the Securities Act of 1933, 15 U.S.C.A. §§ 77a–77aa. A for-

mer conviction on the same indictment was reversed for error in admitting in evidence statements of one Kott, charged as a co-conspirator. Seeman v. U. S., 5 Cir., 90 F. 2d 88. What was there said need not be repeated. The only assignment of error pressed on this appeal is to the denial of a directed verdict of acquittal.

Among those indicted with appellant were Erwin Kott, Edward Fein, and Joseph Lee O'Neal. The offenses charged were conclusively proven as against Kott, Fein, and O'Neal. To support the contention that appellant was connected with them in the transaction, the United States introduced evidence to the following effect. On Thursday, April 9, 1936, a telegraphic money order for $700 was sent from Houston addressed to J. Courtney, New York, by Kott, with a message reading as follows:

"Kept Fifty Pay My Bill I Expect Copies of Number Twenty Lease Here Saturday Ship Immediately.

"[Signed] J. Ross."

Appellant received the telegram and collected the money. The next day, Friday, April 10, 1936, Fein shipped from New York to Houston by air express five forged bonds purporting to be twenty-year gold bonds. They were subsequently received by O'Neal on Saturday, April 11, 1936, while he was in a hospital. He opened the package and took out something, which he said were oil leases. Appellant was arrested in New York on April 27, 1936, when he drove up to his hotel in an automobile in company with Fein. He was asked if he knew Kott and J. Ross and whether he had received the telegram and money and replied in substance that he did not know anything about Kott, J. Ross, or the telegram and money.

Appellant took the stand and testified in his own behalf to the following effect: He denied any complicity in the offenses charged but admitted receiving the telegram and the money. He said his name was Jerihem Seeman but he had used the name of Courtney in doing business as a bookmaker, taking bets on horse races, for about three and a half years before his arrest; that his place of business was on Seventy-Fourth street, N. Y., at a place known as George's Restaurant and later as Tim's Tavern; that during that period Kott made bets with him, using the name of J. Ross, as it was illegal to make bets on horse racing in New York except at the track; that Kott became indebted to him for $1,000, $500 of which was a cash loan and $500 for bets; that Kott paid him $250 in New York and then left to go to either Louisiana, Oklahoma, or Texas; that Kott was interested in dealing in oil leases and he had some conversation with him regarding buying oil leases; that when he received the telegram and money from Kott he considered the money was a payment on the debt Kott owed him and thought that Kott might be shipping him some oil leases, designating the number of the leases, for the purpose of having him buy them or dispose of them to some one else for Kott; that he had known Kott about six years and Fein about six months before his arrest. He denied knowing a man named Segall.

In rebuttal the United States introduced Segall as a witness. He testified, in substance, that he was introduced to appellant by Kott in the fall of 1931; that appellant was then known as Nathan Lewis, said he was in the sports promotion business and said nothing about being a bookmaker. The United States also introduced as a witness one Marcus. In substance, his testimony was that he had been at George's Restaurant or Tim's Tavern every day during the period appellant said he had his place of business there; that he had never seen him and he was not running a bookmaker's establishment at that place; and that a bookmaker named Mat Kelly was doing business at that place.

It is well settled that any act or statement of the accused tending to show consciousness of guilt is admissible in evidence against him, to be considered together with the other evidence in the case. This applies to false statements by the accused in attempting to explain proven facts. Wilson v. U. S., 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Commonwealth v. Devaney, 182 Mass. 33, 64 N.E. 402. Aside from the testimony of appellant, what the jury had before them was conclusive evidence that the offense charged had been committed; that appellant had dealings with Kott and was arrested in company of Fein; that he denied knowing Kott or Ross under either name and denied knowledge of the telegram and money order when arrested; that he denied knowing Segall; that, after it was proven he had received the telegram and money order, he explained them by testifying that he had received the money in payment of a debt, $500 of which resulted from his dealings as a bookmaker with Kott, in which transactions Kott used the name of Ross; that the testimony of Segall and

734

Marcus tended to show, although the evidence was not conclusive, that he was not doing business as a bookmaker; that a reasonable interpretation of the telegram would be that it was directions to appellant to ship twenty-year bonds. Appellant was not obliged to take the stand but, when he did so, he submitted himself to the same rules for weighing his testimony and determining its truthfulness as would apply to other witnesses. The jury was entitled to consider his manner of testifying, his interest in the case, and any evidence tending to contradict him. We do not know what impression he made upon the jury. But it well may be that the jury concluded he was not truthful in attempting to explain the transaction of the telegram. If so, that would tend to show consciousness of guilt and was evidence to be considered in connection with all the other evidence in the case.

On the whole case we cannot say as a matter of law there was not sufficient evidence to take the case to the jury. The record presents no reversible error.

Affirmed.