**KITT et al. v. UNITED STATES.**

No. 4995.

Circuit Court of Appeals, Fourth Circuit.

Dec. 29, 1942.

Hiram M. Smith, of Richmond, Va., for appellants.

Walkley E. Johnson, Asst. U. S. Atty., of Newport News, Va. (Sterling Hutcheson, U. S. Atty. and John V. Cogbill, Asst. U. S. Atty., both of Richmond, Va., and Blair M. Ilderton, Atty., Alcohol Tax Unit, of Baltimore, Md., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

Harry Kitt, Max Sklar, Milton Lerner, Elmer Pecht and Ealam C. Fitts were

charged and tried in the United States District Court for crimes against the United States under an indictment containing five counts. The first count charged that the defendants had in their custody and control a distilling apparatus which had not been registered. The second count charged that they carried on the business of a distiller without having given bond. The third count charged that they made and caused to be fermented 4,860 gallons of mash fit for distillation, on premises not authorized for a distillery. The fourth count charged that they concealed certain distilled spirits upon which the tax had not been paid and which had been removed from a distillery to a place other than a bonded warehouse, provided by law. The fifth count charged a conspiracy to violate federal laws in many respects and set forth various overt acts committed by one or more of the defendants in furtherance of this conspiracy. See 26 U.S.C.A. Int. Rev.Code, §§ 18, 2810, 2833, 2834, 2913.

Kitt, Sklar and Lerner were found guilty, and were sentenced, on each of the five counts in the indictment. Pecht was found guilty and was sentenced on the fourth and fifth counts. Fitts was found guilty and sentenced on the fifth count.

All of the defendants have appealed to this court. We now proceed to discuss the questions raised on appeal.

■ The demurrer of the defendants to the fourth and fifth counts of the indictment was overruled by the District Judge. As to the fourth count, error in the conviction was confessed by the United States on account of the insufficiency of the evidence, so that this count is definitely out of the picture. The ground of demurrer to the fifth count is that the word "unlawful" was used to describe the overt acts charged to have been committed in furtherance of the conspiracy; that these acts were clearly lawful in themselves, and that the descriptive word "unlawful" (as used in the fifth count of the indictment) cannot be rejected as surplusage. The contention, we think, is quite lacking in merit.

■ The cases cited on this question in the brief of appellants are not in point. In Braverman v. United States, 63 S.Ct. 99, 101, 87 L.Ed. ——. Chief Justice Stone aptly said: "The gist of the crime of conspiracy as defined by the [federal] statute is the agreement or confederation of the conspirators to commit one or more unlawful acts where 'one or more of such parties do any act to effect the object of the conspiracy.' The overt act, without proof of which a charge of conspiracy cannot be submitted to the jury, may be that of only a single one of the conspirators and *need not be itself a crime.*" (Italics ours.)

And said Circuit Judge Denman, in Smith v. United States, 9 Cir., 92 F.2d 460, 461: "Appellant contends that the making of the telephone call from Honolulu to Los Angeles is too innocent an act to be an 'overt act' under the conspiracy statute. There is no merit to this argument. Any act without criminal purpose is usually innocent. If the telephone call was in furtherance of the conspiracy, as alleged in the indictment, *it was clearly a criminal act* within the phrase of 18 U.S.C.A., § 88: 'And one or more of such parties do any act to effect the object of the conspiracy.' * * *" (Italics ours.)

A more serious question is presented by the District Judge's overruling a motion to suppress and exclude certain evidence obtained through the execution of a search warrant, which (appellants claim) failed to comply with the requirements of the Fourth Amendment to the Constitution of the United States. Yet we think the District Judge ruled correctly here in denying this motion and in admitting (over the objection of appellants) the evidence in question.

The Fourth Amendment reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ These appellants were not in a position to take advantage of the Fourth Amendment, for that amendment, as its language indicates, is personal, and the rights thereunder granted relate not so much to the introduction of things in evidence in a criminal prosecution but rather to the avoidance of unreasonable searches of property as to which a person asserts some title or interest. The premises here searched were a garage building; the property seized was a still. And here these appellants asserted no claim whatever to any right, title or interest in either the

garage building or the still. Nor is this a mere technicality of pleading or of evidence.

In Armstrong v United States, 16 F.2d 62, 65, certiorari denied 273 U.S. 766, 47 S.Ct. 571, 71 L.Ed. 881, District Judge Neterer (speaking for the Circuit Court of Appeals for the Ninth Circuit) said: "Nor does the record show that the defendant made any claim either to the premises searched or the property seized, and in the absence of such claim, cannot urge unreasonable search upon which to base a constitutional right." To the same effect, see, also, Chepo v. United States, 3 Cir., 46 F. 2d 70, 71; Shore v. United States, 60 App. D.C. 137, 49 F.2d 519, 522, certiorari denied 283 U.S. 685, 51 S.Ct. 656, 75 L.Ed. 1469; United States v. Crushiata, 2 Cir., 59 F.2d 1007.

█ Again, in the instant case, we do not think there was such cooperation between the state and federal officials as would make this case subject to the Fourth Amendment so far as the federal criminal prosecution is concerned. Here the case was originally worked up by the police of the City of Hopewell, Virginia. The warrant in question was issued by the Trial Justice of Hopewell, upon the affidavit of Sergeant Russell of the Hopewell Police. The aid of officials of the Alcoholic Beverage Control Department of the State of Virginia was invoked only just before the raid and seizure, in which these officials did take an active part. Federal officials had no knowledge whatever of the pending raid and seizure, and did not come into the case until some time later.

The stipulation here provides:

"That there is no understanding or agreement between the Hopewell authorities and the federal authorities whereby they may prosecute in the federal courts violations of law discovered by them, and for seventeen years prior to this seizure there had been no such prosecution.

"That there is no understanding between the State authorities and the federal authorities whereby the latter are obligated to take over prosecutions discovered by the former, but it is generally understood by State officers that when they have discovered a violation of federal as well as State law, they are at liberty to consult with the federal officers with a view to determining whether or not the federal officers adopt the case and institute a federal prosecution against the particular offenders; that they frequently do pursue this course and that frequently such cases are adopted by the federal authorities."

We do not interpret this stipulation as bringing the instant case within the doctrines of either Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381, or Sutherland v. United States, 4 Cir., 92 F.2d 305. In the Gambino case, the search was really made on behalf of the United States; in the Sutherland case, there was a clear general cooperation, and also a clear general understanding between the State officers and the officers of the United States. All the stipulation here provides is that the *State officers understood* that they were at liberty to refer such cases to the federal officers, who might or might not, at their election, take over any, all or none of the cases so referred to them by the State officers. Accordingly, the stipulation here provides only for an unilateral understanding on the part of the State officers, not for a bilateral, mutual understanding common to the officers of both the State and the United States. This, of itself, does not include any understanding by the federal officials. In the instant case, too, the initiative and dominance of police of Hopewell was much clearer than in either the Gambino case or the Sutherland case.

█ We next come to the overruling by the District Judge of a motion to direct the jury to find that Fitts and Pecht were not parties to the conspiracy. There was, we think, sufficient evidence to take this question to the jury and to sustain the jury's finding.

The United States proved the close association between Fitts and the other conspirators. Then there was the statement, made to the Chief of Police of the Hercules Powder Company by Fitts in front of the distillery building. In this statement Fitts tried to explain his presence at the distillery building by saying that he had lent $100 to Whirley and Cheek, the two automobile mechanics. There was also evidence to show that Fitts contributed to the furtherance of the object of the conspiracy by paying for the services of a carpenter, Jeff Carter, who constructed the partition between the part of the building in which the distillery was located and the part of the building ostensibly devoted to an automobile repair shop. And there

was ample evidence justifying the finding that the repair shop was located in the building to conceal the distillery and certainly the partition rendered this concealment much more effective. See Allen v. United States, 7 Cir., 4 F.2d 688.

Pecht was, with the other conspirators, arrested at the distillery. There was also evidence that he had been seen at the distillery on other occasions. No evidence was offered to explain his presence at the distillery. This is further buttressed by evidence of Pecht's conversation with Funeral Director Elmore, who had seen Pecht at the distillery building. After the raid, Pecht approached Elmore at the latter's place of business and Pecht said to Elmore: "You know me and you don't know me. * * * You saw me over next door." Later Pecht inquired of Elmore if any officers had been around to show Elmore any pictures. Pecht told Elmore it was best for Elmore not to know too much. And, upon leaving, Pecht assured Elmore that Pecht would see Elmore later. See Meyers v. United States, 6 Cir., 94 F.2d 433, 434, and cases therein cited; Seeman v. United States, 5 Cir., 96 F.2d 732, 733. And District Judge Raymond, in the Meyers case, speaking for the Circuit Court of Appeals for the Sixth Circuit, stated: "The record discloses beyond question the commission of the substantive crimes, and leaves no doubt that several persons were carrying out a preconceived plan to violate the laws of the United States. The existence of a conspiracy is clearly established, and the only question is the connection of appellant with the unlawful plan. The jury having found guilt, slight evidence connecting a defendant with a conspiracy may be substantial and, if it is, is sufficient."

And said Circuit Judge Foster, in the Seeman case: "It is well settled that any act or statement of the accused tending to show consciousness of guilt is admissible in evidence against him, to be considered together with the other evidence in the case."

■ There is no merit, we think, in the motion of appellants to quash the first three counts of the indictment. This motion also extended to the fourth count as to which the United States, as has been indicated, voluntarily confessed error. Appellants contend that these counts do not allege the offenses charged with sufficient fullness and definiteness as to time, place and other circumstances. Particularly appellants complain that the indictment lays the offenses charged in Hopewell, without identifying the building by street and number. If further and more precise information in these connections was necessary or desirable so that appellants might either properly prepare their defense or might set up their conviction or acquittal as a bar to another prosecution for the same crime, their proper remedy was by seeking a bill of particulars. See Leonard v. United States, 6 Cir., 18 F.2d 208; Day v. United States, 8 Cir., 28 F.2d 586; Lauderdale v. United States, 5 Cir., 48 F.2d 481; Miller v. United States, 7 Cir., 53 F.2d 316. Incidentally, all of the appellants except one were arrested at the distillery and the search warrant clearly described the premises as "located at 216 E. Poythress * * * at or near Randolph Street * * * and occupied by or in possession of R. J. Whirley et al."

The District Judge imposed sentences on Kitt of four years imprisonment on each of the first four counts and two years on the fifth count; on Sklar of two years imprisonment on each of the five counts; on Lerner of three years imprisonment on each of the first four counts and two years on the fifth; on Fitts a year and a day imprisonment on the fifth count; on Pecht a year and a day imprisonment on the fourth and fifth counts. It was provided that all the sentences of imprisonment should run concurrently and a fine of $200 was also imposed on each appellant on the several counts on which they were respectively convicted, all fines being cumulative.

■ Under the confession of error by the United States as to the fourth count of the indictment, all sentences under that count must be eliminated. Under the federal statute, the maximum sentence of imprisonment which can lawfully be imposed upon each of the first three counts is two years. It is thus clear that the sentences of imprisonment imposed on Kitt and Lerner under the first three counts are excessive and illegal.

The sentence on Fitts, based solely on the fifth count, is affirmed. With the elimination of the sentence under the fourth count, the sentence imposed on Pecht under the fifth count is affirmed. With the elimination of the sentence un-

924

der the fourth count, the sentence imposed on Sklar under the first, second, third and fifth counts are affirmed. The sentences of imprisonment imposed on Kitt and Lerner under the fifth count are affirmed. The fines imposed, save under the fourth count, are affirmed as to all the appellants. There was, we think, sufficient evidence to support the verdicts under all the counts except the fourth count.

The case is accordingly remanded to the District Court with instructions that the appellants Kitt and Lerner be resentenced under each of the first three counts of the indictment. We venture the suggestion that, in fixing these new sentences, the District Judge will give consideration to the fact that though each of the first three counts, and also the fifth count, sets forth a technically separate crime, yet these crimes have an integral association and a close relationship.

Reversed in part and remanded.