## JOHNSON et al. v. UNITED STATES.

### No. 6464.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1952.

Decided Oct. 11, 1952.

Kyle Hayes and W. G. Mitchell, North Wilkesboro, N. C. (Clyde Hayes and Eugene Trivette, North Wilkesboro, on the brief), for appellants.

Theodore C. Bethea, Asst. U. S. Atty., Reidsville, N. C. (Bryce R. Holt, U. S. Atty., Greensboro, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and WILLIAMS, District Judge.

PER CURIAM.

Glenn Johnson, Sr., (referred to in the caption of this case as Robert Glenn Johnson, Sr.) L. P. Johnson, Ike Welborn and James Parks were indicted at the May Term, 1952, of the United States District Court for the Middle District of North Carolina, at Wilkesboro, being charged with violation of the Internal Revenue laws as set forth in a three count bill of indictment under 26 U.S.C. §§ 2913 and 2803.

These cases were consolidated for trial, jury trial waived, and the Court heard the motion to quash and the evidence in the case at the same time. At the close of the Government's testimony, the defendants made a motion to suppress the evidence and for a directed verdict of not guilty and the motions were overruled. At the close of all the evidence the defendants renewed their motions, which were again overruled. The Court found the defendants guilty as charged in the bills of indictment.

On April 30, 1952, John Stephenson, Deputy United States Marshal, was in possession of a grand jury indictment and

capias for Bill Pardue. Deputy Marshal Stephenson had information that Bill Pardue was at the home of Glenn Johnson, Sr., or L. P. Johnson's home in the Engle Hollow section of Wilkes County. Marshal Stephenson requested Special Investigator C. S. Nicholson of the Alcohol and Tobacco Tax Unit and other investigators to accompany him to that section of Wilkes County for the purpose of arresting Bill Pardue, a fugitive from justice. The officers decided to go to the home of Glenn Johnson, Sr., and passed the home of L. P. Johnson which is located approximately four hundred yards from the home of Glenn Johnson, Sr. Investigators Echerd and Velich were let out with instructions to observe the home of L. P. Johnson to prevent the escape of Bill Pardue, and in the event Bill Pardue was not located at the home of Glenn Johnson, Sr., the officers would return and search for him at the home of L. P. Johnson. Marshal Stephenson and the other officers proceeded to the home of Glenn Johnson, Sr. Marshal Stephenson went to the door of the home of Glenn Johnson, Sr., knocked on it and was met by Fred Johnson, son of Glenn Johnson, Sr. Fred called Glenn Johnson, Sr., who came to the door and was told by the Marshal that he had a capias for the arrest of Bill Pardue and that he understood he was staying at his house or at his son's house, and that he would like to search. A search of the house was made.

Investigator Gard came to the porch and informed the Marshal that he and Investigator Nicholson had located a truck behind the garage at the rear of the Glenn Johnson, Sr., home. The Marshal instructed Investigator Gard to open the truck and search for the fugitive and gave him a Stillson wrench with which to break the lock. Special Investigator Nicholson who had remained at the truck, had received reports that the truck was being used to transport whiskey from Wilkes County to Durham and other points in central North Carolina. He did not have information as to who owned the truck, or who had been driving it. Investigator Nicholson took the Stillson wrench and broke the lock of the truck, which was a

refrigerator type truck similar to those used by meat packing companies. In the truck were found twenty cases of white non-tax-paid whiskey in half gallon fruit jars bearing no stamps thereon. Marshal Stephenson had directed the truck to be opened for the purpose of looking for a fugitive. Investigator Nicholson actually opened the truck for the purpose of looking for whiskey. Glenn Johnson, Sr., was thereupon arrested. It later appeared that the keys to the truck were in the ignition switch at the time it was broken open. Glenn Johnson, Sr., stated that he knew nothing whatever about the truck.

During the period of time that the Marshal and officers were at the home of Glenn Johnson, Sr., Investigator Velich had stationed himself in the road in front of the L. P. Johnson home. Investigator Echerd had proceeded down a road by the side of the L. P. Johnson home and had entered the woods at the rear of the L. P. Johnson yard. While waiting for the officers to return to the L. P. Johnson home Investigator Velich, who had been instructed to observe the L. P. Johnson home to prevent Bill Pardue from escaping, heard the sound of heavy objects being scraped across a cement floor and could smell a strong odor of whiskey. Marshal Stephenson and the other officers then entered the L. P. Johnson premises. As they entered the premises, L. P. Johnson was in the front yard. Marshal Stephenson observed a man go around the house towards the back. Officer Echerd, who was stationed in the woods at the rear of the house, also observed the man come around the back of the house and arrested him as he entered the woods at the rear of the L. P. Johnson home. He was wet with some liquid and had a strong odor of whiskey about him. He was identified as James Parks, a colored man.

After L. P. Johnson was advised of the capias for Bill Pardue, L. P. Johnson refused to allow the officers to make a search. He was intoxicated and in order to make the search he was taken into custody. Officers Nicholson and Stephenson searched the house. Officer Nicholson searched the basement of the house and found Ike Wel-

born hiding behind a low wall. Officer Nicholson also went into the garage which was attached to and a part of the home and there found 237 gallons of white nontax-paid whiskey. Part of this whiskey had already been filtered and placed in half gallon jars. Some of it had not been filtered. Also seized were thirty-six five-gallon cans that had just been emptied of whiskey.

■ Appellants first raise the question that the searches here involved violated the Fourth Amendment to the Constitution of the United States and that the evidence developed as a result of these searches should be suppressed. We think, as did the District Judge, that there was reasonable ground for the searches and that the evidence in question was admissible. We find nothing in the cases cited by the appellants which would warrant any other conclusion. Among the cases particularly stressed by appellants are Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; United States v. Trupiano, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Hart v. United States, 10 Cir., 162 F.2d 74. But to the extent that such cases stress the practicability of obtaining a search warrant prior to the search, they have been supplanted by the recent decision of the Supreme Court of the United States in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, which held that the test was the real reasonableness of the particular search, viewed in the light of all the facts and circumstances of the case.

■ We think, too, there was sufficient evidence to support the finding by the District Court of guilty as to all these appellants. The only appellant as to whom there could well be any doubt here is Glenn Johnson, Sr. True it is that L. P. Johnson told the officers that the truck containing the liquor, found on the premises of Glenn Johnson, Sr., was owned by L. P. Johnson, as was also the liquor in the truck. None of the appellants took the stand, however,

to explain the presence of the truck at the home of Glenn Johnson, Sr.

The judgments of the District Court are, accordingly, affirmed.

Affirmed.