UNITED STATES v. WELDON.

No. 22253.

United States District Court
S. D. California, S. D.

May 1, 1953.

Walter S. Binns, U. S. Atty., Los Angeles, Cal., Sherwood Roberts, Asst. U. S. Atty., San Diego, Cal., for plaintiff.

Crandall Condra and Kenyon C. Keller, San Diego, Cal., for defendant.

WEINBERGER, District Judge.

A motion was made by the defendant to suppress the admission into evidence of certain articles of property hereinafter described. The motion was filed shortly before the trial of the case, and counsel then stipulated that they would also rely upon affidavits, briefs and appeal briefs filed in connection with previous motions directed to the suppression of these same articles, which motions had been previously denied in other proceedings.

The Court had not sufficient opportunity to study the present motion prior to the beginning of the trial, and instructed the United States Attorney to proceed with his proof, but to refrain from introducing, for the time being, any evidence connected with the property which was the subject of the motion. Later in the trial, we announced that we would hear testimony on the motion, and this was done, outside of the presence of the jury. F. B. I. agents Martindale and Flack testified they would adhere to the matters stated in their affidavits, as did Mr. and Mrs. Weldon, although agents Martindale and Flack testified in addition, as did attorney Davis. After hearing oral testimony, we denied the motion to suppress insofar as it pertained to all the property except the $28.51 and the bill of sale of the furniture which latter property the Government had conceded, in a prior motion, might be suppressed and returned to Mr. Weldon. This memorandum is furnished counsel for their information, and is intended to supercede our remarks from the bench which we made with reference to the motion at the beginning of the trial.

On June 5, 1950 the defendant herein filed a voluntary petition for adjudication as a bankrupt, and on said date was so adjudicated. A trustee was appointed, and the administration of the bankruptcy estate ensued. On July 14, 1950, F. B. I. agents searched an apartment occupied by the bankrupt and his wife, and removed therefrom certain articles.

From the affidavit and testimony of Agent W. L. Martindale, and of the F. B. I., it appears that he had reason to believe, from official F. B. I. reports, that Weldon was in possession of sums of money belonging to the bankrupt estate which the latter was concealing from the trustee. About 5 p.m. on July 13, 1950 said agent appeared before the U. S. Commissioner and swore to a complaint to the effect that Weldon had knowingly and fraudulently concealed property belonging to the bankrupt estate, and at said time the Commissioner issued a warrant for the arrest of Weldon on said charge.

Shortly after 6 a.m. on the morning of July 14, 1950, agents Martindale and Flack, with two other F. B. I. agents, appeared at the apartment of Mr. and Mrs. Weldon and stated that they had a warrant of arrest for Mr. Weldon and informed Mr. Weldon he was under arrest; when Weldon was asked to produce all the money in the house he took the sum of $28.51 from his wallet and stated there was no other money on the premises. The agents then announced they intended to search the apartment as incident to the arrest, and Weldon asked permission to telephone his attorney Mr. E. C. Davis. He did so. Agents Martindale and Flack were in the room at the time, and their testimony as to the portion of the conversation they heard differs with that of Weldon. According to the testimony of the agents, Weldon was handed the warrant of arrest, and he read it over the telephone to his attorney and advised his counsel that the agents intended to search the premises and that they did not have a search warrant. Then agent Martindale talked to Mr. Davis, and according to Mr. Martindale, the latter told Mr. Davis that he believed money was concealed in Weldon's home and that they intended to search the premises incident to the arrest; that Mr. Davis replied that his client had told him there was no money in the house

and that neither he nor his client objected to the search.

Mr. Davis denied by affidavit that he had made the last mentioned statement, and that he had consented to the search. Weldon and his wife in their affidavit stated that they did not consent to the search and it was made against their will. Mr. Davis likewise on the witness stand denied having given consent to the search on behalf of himself and his client and also stated he had no recollection of Weldon's having read to him the warrant of arrest.

Mr. Davis stated at the close of his testimony that he was asleep just prior to talking over the telephone, and was not sure he was not still "sleepy" when the conversation took place.

On the other hand, agent Flack testified that he kept a "log" of the incidents which occurred at the time, making entries about every five minutes, and that he was positive the warrant of arrest was read by Weldon into the telephone. Agent Martindale was positive in his testimony that Davis had made the statement that neither he nor his client objected to the search.

We are inclined to the belief that the testimony of the agents carries the greater weight; one of them took notes which he produced at the time he testified, and it is our view that attorney Davis' recollection was uncertain and not convincing due to the fact that he was still sleepy at the time he conversed with Weldon and agent Martindale.

After the telephone conversation, the agents proceeded to make a most thorough search of the premises, and found, and took with them the following:

$900 in currency, found in a drawer of the dresser used by Mrs. Weldon, in her cigarette case, and claimed by her as her separate property.

$28.51 in currency and small change in Weldon's wallet.

Also taken was a bill of sale reflecting the sale of a Crosley automobile from Weldon to a Mrs. Prince on June 13, 1950. An index card showing payments to Mr. Weldon's mother on June 1, 1950, which Weldon claimed were in payment of a loan, but which loan he did not list on his bankruptcy schedules and a bill of sale showing sale of household goods by Weldon to a Mr. Prince on May 23, 1950. Weldon was then asked to accompany the agents and with them left the apartment under arrest.

Counsel for defendant Weldon urge that the search without a search warrant was illegal and violated the constitutional rights of the defendant, and that the warrant of arrest issued by the Commissioner was invalid.

Government counsel contend that the search was one incidental to a valid arrest, and further, that it was made with the consent of the defendant through his counsel.

■ It is our view that the arrest was valid and that consent, as testified to by Agent Martindale, was given by counsel for defendant Weldon.

Counsel for the defendant maintain that the search was a "generally unlimited exploratory search" and of the type condemned by the opinion in Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374, and in United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877.

Counsel also cite Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145.

In the Agnello case, supra, the defendant was arrested at one place, and the evidence sought to be excluded was found at other premises, without a search warrant. It was said, in the opinion, 269 U.S. at page 30, 46 S.Ct. at page 5:

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543; Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652. The

legality of the arrests or of the searches and seizures made at the home of Alba is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests. But the right does not extend to other places. * * *"

We do not find any similarity between the facts in the case from which we have just quoted and the instant one; the search of Weldon's apartment was made in his presence, at the time of the arrest, and of the place where the arrest was made.

In the Gouled case, supra, one of the papers sought to be excluded was obtained surreptitiously from defendant's possession, without a search warrant, and not incident to an arrest. The other papers, purely of evidentiary value, were obtained with the use of a search warrant. The paper first mentioned was excluded on obvious grounds; the other papers were excluded on the ground that the search warrant was used as a means of gaining access to the defendant's house solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding.

Again, we find the facts in the cited case totally dissimilar to the facts before us.

In the Lefkowitz case, supra, 285 U.S. at pages 465 and 466, 52 S.Ct. at page 423, it was said:

"Here, the searches were exploratory and general and made solely to find evidence of respondents' guilt of the alleged conspiracy or some other crime. Though intended to be used to solicit orders for liquor in violation of the act, the papers and other articles found and taken were in themselves unoffending. The decisions of this court distinguish searches of one's house, office, papers or effects merely to get evidence to convict him of crime, from searches such as those made to find stolen goods for return to the owner, to take property that has been forfeited to the government, to discover property concealed to avoid payment of duties for which it is liable, and from searches such as those made for the seizure of counter-feit coins, burglars' tools, gambling paraphernalia and illicit liquor in order to prevent the commission of crime. Boyd v. United States, 116 U.S. 616, et seq., 6 S.Ct. 524, 29 L.Ed. 746; Weeks v. United States, 232 U.S. 383, 395, 34 S.Ct. 341, 58 L.Ed. 652; Gouled v. United States, supra, 255 U.S. 306, 41 S.Ct. 261, 65 L.Ed. 647; Carroll v. United States, supra."

█ It is our thought that any asset of Weldon which he had at the time of filing his petition belonged to the trustee in bankruptcy, and likewise any proceeds from such assets, or any bill of sale or other paper received in place of such assets; likewise, any record of the disposition of such assets which might be of use to the trustee in regaining such assets for the benefit of the creditors.

The agents, when they entered the apartment, made known that they were searching for money concealed from the creditors. Thus, this case presents more of a situation where the officers were, incident to a valid arrest under a warrant for arrest, searching for stolen property, or for the fruits of a crime. If Weldon was concealing any assets from the creditors or trustee, he was committing a crime in the presence of the officers. If he had any assets in his possession at the time, such assets partook of the nature of stolen property; and if he had converted any assets, and was concealing the proceeds, these were "fruits of his crime."

It is our view that the case of Matthews v. Correa, 2 Cir., 135 F.2d 534, is most pertinent to the issue before us. Our research discloses no reversal nor criticism of the principles expressed in the opinion written by Judge Charles E. Clark of the Court of Appeals of the Second Circuit, and the case was cited in notes to Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

In the Matthews v. Correa case [135 F. 2d 536], the petitioner sought to regain seven address books and an account book taken from her home. Three Government agents had entered on a warrant of arrest charging petitioner with concealing money,

merchandise and other property from the trustee in bankruptcy; petitioner alleged the search was most thorough "from cellar to roof". At the time of the hearing on the motion, the Court observed that the United States sought to justify the retention of the property on the ground that they "constituted the fruits of a crime", relying upon the case of Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, and the case of Cheng Wai v. United States, 2 Cir., 125 F.2d 915. The petitioner there, as in the case here, relied upon the Lefkowitz and Agnello cases, supra.

At page 537 of 135 F.2d of the opinion, Matthews v. Correa, supra, Circuit Judge Clark stated:

"Under the circumstances of the charge, it would seem most appropriate that the officers should look around for property concealed or withheld from the bankruptcy trustee; and if they found it or documents concerning it, this would be matter which they should retain. The line between fruit of the crime itself and mere evidence thereof may be narrow; perhaps this turns more on the good faith of the search than the actual distinction between the matters turned up. In any event, the articles in question are more than evidential; they are the very things withheld".

At page 536 of 135 F.2d it was stated that by the affidavit of the government agent, the account book showed petitioner's receipts and disbursements during a certain period, and the address books contained certain entries regarding expenditures, while all contained addresses of various suppliers which defendant used prior to her bankruptcy and their names, etc.

At the bottom of the first column on page 537 of 135 F.2d the Court stated:

" * * * And the Attorney has shown reasonable grounds for the conclusion that these books, though dealing in part with matters subsequent to the bankruptcy, did properly concern matters with which the trustee was concerned."

The Court then stated that it wished to know more about the connection with the books and the pre-bankruptcy activities of the petitioner, and while it sustained the government and denied the motion, it was without prejudice to renewal by the petitioner of her contention at the trial. It intimated that it was not satisfactory to try out such a matter on affidavits alone. (We, too, felt that in view of the contradictions in the affidavits filed by the respective counsel that we should take testimony, and as we mentioned earlier herein, did so.)

The cases of United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, Johnson v. United States, 4 Cir., 199 F. 2d 231 and United States v. Pisano, 7 Cir., 193 F.2d 361 are likewise pertinent and these cases, together with those from which we have quoted herein have led us to the further view that regardless of whether or not consent to the search was given, it was a valid search made incident to a valid arrest.