**UNITED STATES of America**
v.
**Columbus BROWN.**
**No. 11331.**

United States District Court
E. D. Virginia, Norfolk Division.
Jan. 8, 1957.

442

L. S. Parsons, U. S. Atty., Norfolk, Va., William F. Davis, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Sacks & Sacks, Stanley Sacks, Norfolk, Va., for defendant.

HOFFMAN, District Judge.

In a two-count indictment the defendant is charged with unlawfully and feloniously removing, depositing, and concealing 26 gallons of distilled spirits with intent to evade or defeat the assessment or collection of a tax, contrary to the provisions of § 7206(4) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7206(4), and with having in his possession the aforesaid distilled spirits in containers not having the stamps required by § 5008(b) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 5008(b).

The guilt of the defendant is entirely dependent upon the validity of the search and seizure. The importance of the question requires a consideration of Sutherland v. United States, 4 Cir., 92 F.2d 305, and Kitt v. United States, 4 Cir., 132 F.2d 920, as well as other authorities touching upon the much confused subject of search and seizure under the Fourth Amendment to the Constitution of the United States.

Defendant lived in premises designated as 606 East Freemason Street, Norfolk, Virginia, which is a rooming house containing ten rooms, five of which are on each of two floors. He first rented Rooms 6 and 7 on the second floor. Later, through the medium of taking over other vacated rooms or other motives, defendant paid the rent on Rooms 1, 2, 3 and 5. Rooms 4 and 8 were rented to women and Rooms 9 and 10 were occupied by one Albert Willingham.

Norfolk City Police, having been suspicious of the illegal activities of defendant for some time, arranged to conduct a raid on May 2, 1956. Sergeant Littlejohn, being of the opinion that defendant rented the entire house although correct information could have been obtained from the real estate agent, procured a search warrant designating the premises to be searched as "606 East Freemason Street". Accompanied by other city law enforcement officers, the party went to the premises and heard an argument ensuing on the second floor (rooms 6 and 7). The front door being open, the officers proceeded to the second floor where they met a man coming from the rear of the hallway with a glass of illegal whiskey in his hand. Subsequently it was determined that a partially filled jug of whiskey was in a bathroom used in common by the occupants. An officer knocked on the screen door of rooms 6 or 7 and, when no one answered, the city police broke into these rooms where six persons, including defendant, were found. Sergeant Littlejohn advised defendant of the contents of the search warrant and defendant produced certain keys. Two of the officers descended to room 2 where they found paper cartons, empty jugs with a strong odor of whiskey, and other miscellaneous articles. As the available keys did not fit room 5, one of the officers returned to rooms 6 and 7 where a third officer had remained with the six occupants. The officer remaining in room 6 or 7 had noted that defendant had removed a key from the key ring and hidden same. When another officer returned with infor-

mation that the available keys did not fit room 5, the officer having remained in the room with defendant insisted upon the production of the hidden key, although no force was used to obtain the same.

As the officers returned to enter room 5, which is available only by walking around the side of the house and entering from a back porch, Sergeant Littlejohn met W. T. McFarland, a special investigator for the Alcohol and Tobacco Tax Unit. McFarland knew nothing of the contemplated raid by the city officers but was investigating the status of a forfeiture proceeding involving an automobile registered in the name of James Brown, 606 E. Freemason Street, Norfolk, Virginia. Littlejohn advised McFarland that the city officers were in the process of making a search of the premises and that Littlejohn had a search warrant. As Littlejohn and McFarland walked to the rear of the premises a city officer was then in the process of opening room 5. The contents of this room were readily observable by anyone within a reasonable number of feet from the door and it revealed a large quantity of burlap bags, empty gallon jugs, tops, corks, and approximately four or five full jugs of illegal whiskey. McFarland had no prior knowledge that the police officers would be at the stated address, nor did he know anything of the nature of their activities or the object of same prior to being advised by Sergeant Littlejohn as to the purpose of the search. It is undoubtedly true that the city police officers were not conducting the search in behalf of the Federal authorities, that no Federal officer had given information to the city police concerning either the premises or the defendant, and that no Federal officer knew of the contemplated search by the city officers. There was no understanding or agreement between the city and Federal officers that the matter might be prosecuted in the Federal Court in the event criminal activities were discovered during the search and seizure, nor was there any understanding that the Federal authorities would have the first opportunity to try any apprehended violators under the Federal law.

After the illegal whiskey was discovered in room 5, Sergeant Littlejohn and Investigator McFarland then discussed what procedure would be followed and whether or not the Federal authorities should take over the prosecution. The city police appeared to be willing for the Federal authorities to prosecute but McFarland, being uncertain as to the status of the matter, proceeded to contact the United States Attorney for advice. The premises in question being only three blocks from the Federal Building, and the raid having been conducted at approximately 1:30 P. M., the United States Attorney personally visited the scene and authorized the issuance of a Federal warrant for the arrest of the defendant.

The whiskey was destroyed by two Federal officers, one of whom had been called by Investigator McFarland after it was determined that the Federal authorities would prosecute, and one city officer assisted. Two automobiles were also seized on the basis of whiskey being found at the premises, but the validity of such a seizure is not presently before the Court.

It is clear that Investigator McFarland's presence at the scene of the search and seizure was inadvertent and not the result of any connivance, agreement or understanding between the Federal and city officers. The pertinent question is whether or not the evidence uncovered by reason of the search and seizure is now admissible in a criminal proceeding in the Federal Court.

The Government did not produce in evidence the search warrant secured by the city officers. This is of little moment as defendant failed to file a motion under Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which would have permitted an exploration of this phase of the case prior to trial. In any event, the Court accepts the testimony of Littlejohn to the effect that a state search warrant was procured.

■ It is next asserted that the search warrant was invalid in that it named the entire premises, whereas the building had at least the appearance of a rooming house. There is merit to this contention as the more recent decisions appear to hold that a warrant describing an entire building is void, when cause is shown for searching only one room or apartment. United States v. Hinton, 7 Cir., 219 F.2d 324; United States v. Diange, D.C., 32 F.Supp. 994. Reliance by the Government upon Malacrauis v. United States, 4 Cir., 299 F. 253, 255, is to no avail as this case would no longer be considered the law under Sutherland, supra. But in Malacrauis, supra, the court did say that the evidence was admissible in the Federal prosecution "even if the warrant was invalid".

■ Assuming arguendo that no search warrant had been obtained, what rights have the Federal authorities to adopt as its evidence such evidence as may have been illegally obtained by state or local authorities under the peculiar circumstances of this case?

The Sutherland case goes as far as the Fourth Circuit has leaned in concluding against the admissibility of evidence illegally obtained by state officers. As Judge Parker said, in holding that there was a general understanding and general cooperation between state and Federal officers that the latter may prosecute in the Federal courts offenses which the former discover in the course of their operations:

"It is the fact that there was such co-operation and adoption and not the fact that the search was made solely in behalf of the United States which in our opinion is the determining factor; for, whether the arrest, search, and seizure be made solely on behalf of the United States or not, it remains true that 'the rights guaranteed by the Fourth and Fifth Amendments may be invaded as effectively by such co-operation as by the state officers acting under direction of the federal officials'". [92 F.2d 308.]

The force of Sutherland was considerably modified by the Kitt case, supra, decided some five years later. There, Judge Dobie distinguished Sutherland by pointing out that in the earlier case there existed a clear general cooperation, and also a clear general understanding, between the state and Federal officers. In Kitt, the stipulation provided that the state officers *understood* that they were at liberty to refer such cases to the Federal officers, who might, or might not, at their election, take over any, all or none of the cases so referred to them by the state officers. It is further said:

"Accordingly, the stipulation here provides only for an unilateral understanding on the part of the State officers, not for a bilateral, mutual understanding common to the officers of both the State and the United States. This, of itself, does not include any understanding by the federal officials. In the instant case, too, the initiative and dominance of police of Hopewell was much clearer than in either the Gambino case [Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293] or the Sutherland case." [132 F.2d 922.]

Defendant urges that the casual presence of McFarland on the scene after the local officers had searched room 2 and obtained the key to room 5, and at approximately the same time that one of the local officers was in the process of opening the door to this latter room, is sufficient to make McFarland, the Federal officer, a participant under Byars v. United States, 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L.Ed. 520, where it is said:

"We do not question the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account. But the rule is otherwise when the federal government itself, through its agents acting as such, participates in the wrongful search and seizure."

Mature consideration of Byars will clearly show that the Federal officer was

a participant in the search from the very beginning, even though he had no warrant and relied solely upon the state warrant which the Court held to be invalid. It follows that a state warrant must meet the tests prescribed by the Fourth Amendment and the laws of the United States, if it constitutes the basis of a Federal search and seizure or if the evidence procured thereunder is submitted for consideration in a Federal prosecution. The Byars case also held:

> "While it is true that the *mere* participation in a state search of one who is a federal officer does not render it a federal undertaking, the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods. Constitutional provisions for the security of person and property are to be liberally construed, and 'it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L. Ed. 746; Gouled v. United States [255 U.S. 298 at page 304, 41 S.Ct. 261, at page 263, 65 L.Ed. 647], supra."

Stating in Byars that each case must rest upon its own peculiar facts, the Court concluded:

> "We cannot avoid the conclusion that the participation of the agent in the search was under color of his federal office and that the search in substance and effect was a joint operation of the local and federal officers. In that view, so far as this inquiry is concerned, the effect is the same as though he [the federal officer] had engaged in the undertaking as one exclusively his own."

Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 138, 72 L.Ed. 293, affords no comfort to defendant. In that case defendants were arrested by New York State Troopers, at a point near the Canadian border, after their automobile, in which liquor was found, was searched without a warrant. The defendants and the seized liquor were immediately turned over to the Federal officer for prosecution in the Federal Court. The Court found that no probable cause existed and, having disposed of this point, proceeded to declare that the search was in fact made in behalf of the Federal authorities under the National Prohibition Act, 27 U.S. C.A., as defendants could not have been guilty of any offense against the State of New York in view of the repeal of the New York State prohibition act. The Court traces the repeal of that act and noted that the Governor had instructed and required state law enforcement officers to aid in the enforcement of the Federal law "with as much force and as much vigor as they would enforce any state law or local ordinance", and that the repeal of the state law should make no difference in their action, except that the officers *must* take the offender to the Federal Court for prosecution. In essence, Gambino held that these facts constituted cooperation by force and effect of law, to the same extent as though the state officers had been acting under specific direction of the Federal officers.

The Sutherland case is mildly criticized in United States v. Moses, 7 Cir., 234 F.2d 124, 126, where it is said that Sutherland "marks the high point in our courts' willingness to enforce federal responsibility for the illegal acts of state officials". Quoting with approval from United States v. Haywood, 7 Cir., 208 F.2d 156, the Court pointed out that when a search is made by state officers only, the defendant must prove an agreement (believed to be at least a tacit agreement) or established practice "whereby unlawful searches and seizures were to be made by the police officers and the evidence thus obtained turned over to federal officers". Summarizing, the Court said that the Fourth Amendment would be violated (1) when federal agents actually initiate or participate in the unreasonable search, and (2) when the Federal Government can be said to have encouraged an unreasonable search by establishing a

practice of accepting prisoners and evidence from state officials for prosecution under the Federal laws.

Tested by these principles, and those set forth in Kitt and Sutherland, supra, it cannot be said that the Federal officers in this case had any bilateral clear common understanding or agreement so as to invoke the doctrine of the Fourth Amendment. Nor should it be contended that McFarland, the Federal officer, actually participated in the illegal search and seizure merely because he happened, by a sheer coincidence, to come upon the scene at the time. There is far less reason to grant the defendant in this case the protection of the Fourth Amendment as existed in Thomas v. United States, 4 Cir., 290 F. 133, where a state officer, en route to serve a search warrant, encountered two Federal officers and invited them to participate actively in the search, which they did. While the doctrine of the Thomas case may be weakened by the later decisions of the United States Supreme Court and Thompson v. United States, 4 Cir., 22 F.2d 134, the facts of the case at bar furnish stronger support for the admissibility of such evidence than in the Thomas and Thompson cases.

The subsequent decision in Myers v. United States, 4 Cir., 49 F.2d 230, 231, certiorari denied 283 U.S. 866, 51 S.Ct. 657, 75 L.Ed. 1470, holds emphatically that the mere presence of a Federal officer at the time of a search does not, in itself, render the evidence inadmissible, if otherwise competent, in a prosecution in the Federal Court. Quoting with approval from the Thompson case, Judge Parker said:

"The real inquiry, therefore, is whether under the facts of this case the search was in truth a proceeding by the state, or whether, on the other hand, it was an undertaking of the federal prohibition agent to obtain evidence in a manner forbidden by the federal law, and at the same time to avoid the consequences by cooperation with a state officer."

Despite the intervening Sutherland decision, the cases decided by this Circuit subsequent thereto do not reveal an expansion of the Sutherland doctrine. In fact, it may be safely stated that it has been definitely limited in Kitt, supra, as well as in Wheatley v. United States, 4 Cir., 159 F.2d 599, Love v. United States, 4 Cir., 170 F.2d 32, certiorari denied 336 U.S. 912, 69 S.Ct. 601, 93 L.Ed. 1076; Martin v. United States, 4 Cir., 183 F. 2d 436; Johnson v. United States, 4 Cir., 199 F.2d 231, certiorari denied 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1342; Harman v. United States, 4 Cir., 210 F.2d 58; Clifton v. United States, 4 Cir., 224 F.2d 329, certiorari denied 350 U.S. 894, 76 S.Ct. 152, 100 L.Ed. 786, and United States v. Williams, 4 Cir., 227 F.2d 149.

The defendant is adjudged to be guilty as charged in the indictment, and shall be brought before the Court for sentencing. By reason of the ambiguity existing in the decisions of all courts touching upon the questions involving the validity of searches and seizures under the Fourth Amendment, the Court is of the opinion that the defendant is entitled to bail pending appeal, providing defendant takes prompt and bona fide steps to perfect said appeal. Rule 46(a) (2), as amended April 9, 1956, effective July 8, 1956.